STATE OF NORTH CAROLINA v. THOMAS MARK ADAMS

No. 3A89-2

(Filed 5 September 1997)

**1. Criminal Law § 1359 (NCI4th Rev.)— capital resentencing—stipulation from prior sentencing—disregarded—no error**

A defendant was not deprived of due process in a capital resentencing where the State was allowed to disregard a stipulation from defendant's first sentencing proceeding that there was insufficient evidence to prove that defendant had an intent to rape the victim when he entered the building or that he actually raped her. The genuine belief of the previous prosecutor that there was a lack of evidence to support an aggravating circumstance cannot bind the State at a resentencing proceeding where the prosecutor at the resentencing has evidence to support the aggravating circumstance.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**2. Criminal Law § 1335 (NCI4th Rev.)— capital resentencing—stipulation at prior sentencing—waiver of cross-examination—stipulation disregarded—pathologist now deceased—no violation of right to confront witnesses**

The trial court did not deprive defendant of his right to confront witnesses against him in a capital resentencing by allowing the State to disregard a stipulation from the first sentencing proceeding that there was insufficient evidence to prove that defendant had an intent to rape the victim where defendant contended that the doctor who performed the autopsy on the victim was deceased at the time of the resentencing and could not be cross-examined. The results of the autopsy were admitted through the testimony of another doctor, whom defendant was able to fully cross-examine and from whom defendant elicited favorable opinions. Additionally, certain evidence in the stipulation was not accurate and there was some disagreement concerning when loss of consciousness would have occurred.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Admissibility in rape case, under Rule 412 of Federal Rules of Evidence, of evidence of victim's past sexual behavior. 65 ALR Fed. 519.

3. **Criminal Law § 1359 (NCI4th Rev.)— capital resentencing—aggravating circumstances—not submitted at first proceeding—submitted at second—no double jeopardy violation**

A defendant's right not to be subjected to double jeopardy in a capital resentencing proceeding did not preclude submission of aggravating circumstances not submitted or supported at the first capital sentencing proceeding. Although defendant contends that the State failed to introduce sufficient evidence on these points during the previous trial and was barred from putting defendant in jeopardy on these issues in the second proceeding and should also have been barred from introducing otherwise inadmissible evidence supporting these circumstances, jeopardy attaches in a capital sentencing proceeding for double jeopardy purposes only after there has been a finding that no aggravating circumstance is present. Because three aggravating circumstances were submitted and found in the prior proceeding in this case, and because the aggravating circumstances submitted were supported by the evidence, defendant's double jeopardy and due process rights were not violated.

**Am Jur 2d, Criminal Law §§ 598, 599.**

4. **Constitutional Law § 230 (NCI4th)— capital resentencing—relitigation of mitigating circumstances—not precluded by double jeopardy**

The trial court did not violate a defendant's rights under the Double Jeopardy Clause and the constitutional doctrine of collateral estoppel in a capital resentencing proceeding by refusing to instruct the jury that the mitigating circumstances found by the jury at the first proceeding were established as a matter of law. Under the analysis of the United States Supreme Court, the capital sentencing hearing is not a set of mini-trials on the existence of each aggravating circumstance; the finding of any particular aggravating circumstance does not of itself require the death penalty and the failure to find any particular aggravating circumstance does not preclude the death penalty; the rejection of an aggravating circumstance is not an acquittal of that circumstance for double jeopardy purposes; and the use of that circumstance

STATE v. ADAMS

[347 N.C. 48 (1997)]

in a second proceeding is not prohibited. It follows that the Double Jeopardy Clause does not apply to preclude relitigation of the existence of mitigating circumstances.

**Am Jur 2d, Criminal Law §§ 309 et seq.**

**5. Criminal Law § 1340 (NCI4th Rev.)— capital resentencing—evidence of remorse excluded—no evidence of subject of remorse**

There was no plain error in a capital resentencing where the trial court excluded evidence of defendant's remorse. Although defendant contends that the trial court apparently believed that this evidence was hearsay and thus inadmissible, relevant mitigating evidence cannot be excluded at a sentencing hearing based upon evidentiary rules. However, the evidence must be relevant to defendant's character or record and the circumstances of the offense and this defendant failed to except to the ruling or to preserve what the witness's testimony would have been. There is no way to know what defendant said he was "sorry about" when his family saw him at the jail.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**6. Criminal Law § 564 (NCI4th Rev.)— capital resentencing—statement by witness—defendant seen on death row—no mistrial**

The trial court did not err in a capital resentencing by not granting a mistrial where a defense witness stated on cross-examination that she had seen defendant on death row. This case is more similar to *State v. Spruill*, 338 N.C. 612, than to *State v. Britt*, 288 N.C. 699. The witness made only one mention of death row, the record indicates that it was inadvertent, and several witnesses testified concerning defendant's behavior in prison, so that it was clear to the jury that defendant had been in prison and the jury could have inferred that defendant had previously been sentenced to death. Most importantly, the remark came from a defense witness and it was impossible for the prosecutor to foresee that her question would elicit this response. It does not appear that the prosecutor had any improper motive in asking this question or that it was an intentional attempt to elicit the fact that defendant had been on death row; in fact, the prosecutor had not had any contact with the witness prior to trial. The remark concerning seeing defendant on death row

did not result in substantial and irreparable prejudice to defendant's case.

**Am Jur 2d, Criminal Law §§ 580-586.**

**7. Criminal Law § 560 (NCI4th Rev.)— capital resentencing— juror's question—defense attorney's integrity—no mistrial**

The trial court did not err in a capital resentencing by denying defendant's motion for a mistrial following jurors' questions concerning defense counsel's integrity. During defense counsel's cross-examination of a detective, rolling papers fell out of the pocket of the pants defendant had been wearing at the time of the offense as defense counsel examined the pants. A juror informed the trial court during a recess that he had questions about how the rolling papers fell out of the pants, suggesting that defense counsel might have planted them there. The prosecutor was eventually able to establish that references to the rolling papers were included in the lab notes made by an SBI agent during his examination of the pants and, after the jury had returned, stated that neither she nor defense counsel had searched the pocket, that an SBI agent had informed them that lab notes contained references to the rolling papers, and that it was clear that the papers had been in the pants pocket at the time they were seized and for at least seven and one half years. The trial court informed the jurors that he had known defense counsel for at least fifteen years and that none of the attorneys in the case would manipulate or alter or plant evidence, the judge asked the jurors whether any of them felt they could not be fair to the State or the defense and each indicated that he or she could be fair, and defense counsel was allowed to inform the jury that the attorney who had picked up the pants had not been involved with the case until about one year previously.

**Am Jur 2d, Criminal Law §§ 580-586.**

**8. Criminal Law § 690 (NCI4th Rev.)— capital resentencing— mitigating circumstances—peremptory instructions—no error**

There was no plain error in a capital resentencing proceeding in the trial court's peremptory instructions on mitigating circumstances where defendant contended that the peremptory instruction given by the judge failed to make clear the uncontroverted nature of the evidence, but the court's instruction properly

allowed the jury to determine the credibility of the evidence presented and also conformed with the North Carolina Pattern Jury Instructions.

**Am Jur 2d, Criminal Law §§ 628.**

**9. Criminal Law § 690 (NCI4th Rev.)— capital resentencing— mitigating circumstances—remorse— peremptory instruction refused—no error**

The trial court did not err in a capital resentencing proceeding by not giving a peremptory instruction on defendant's remorse where the testimony tended to show that defendant was remorseful for having hurt his family and for the effect his conduct was going to have on his own life and did not clearly demonstrate that defendant was sorry he took the victim's life.

**Am Jur 2d, Criminal Law §§ 628.**

**10. Criminal Law § 690 (NCI4th Rev.)— capital resentencing— mitigating circumstances—good relationship with family— peremptory instruction refused—no error**

The trial court did not err in a capital resentencing proceeding by not giving a peremptory instruction that defendant generally maintained a good and loving relationship with his parents and other family members. The trial court noted that there was some question as to whether it was defendant or his family who had maintained the relationship; both of defendant's parents testified concerning defendant's quitting school and the pain and expense defendant's criminal activities had caused the family; and defendant's mother testified that there was a lot defendant had done which they would never understand. The evidence was controverted and defendant was not entitled to the requested peremptory instruction.

**Am Jur 2d, Criminal Law §§ 628.**

**11. Criminal Law § 690 (NCI4th Rev.)— capital resentencing— mitigating circumstances—level of maturity—evidence controverted—peremptory instruction refused**

The trial court did not err in a capital resentencing by not peremptorily instructing the jury that defendant had a level of maturity that would reduce his culpability where the evidence showed that he had earned his GED by the time he was seventeen and had a stable, loving home and family, but also that he had

STATE v. ADAMS

[347 N.C. 48 (1997)]

planned the crime for at least a couple of days and had a prior criminal record. The evidence concerning defendant's maturity level was not uncontroverted.

**Am Jur 2d, Criminal Law §§ 628.**

12. **Criminal Law § 1335 (NCI4th Rev.)— capital resentencing—evidence that victim would have lived with treatment—admissible**

There was no plain error in a capital resentencing where the trial court admitted medical testimony that the victim may have survived if treated. The Rules of Evidence do not apply in sentencing hearings; any evidence the court deems relevant to sentence may be introduced. Here, although defendant argues that he had no reason to realize that medical attention could have saved the victim and that the testimony had no relevance, defendant stated to law enforcement officers that he continued to stab the victim because she wouldn't die and that she slowly bled to death, so that the medical testimony served to corroborate defendant's statements, and whether death is immediate or delayed is relevant to whether the crime was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(a)(3).

**Am Jur 2d, Criminal Law §§ 580-586.**

13. **Criminal Law § 1335 (NCI4th Rev.)— capital resentencing—evidence of infraction of prison rules—relevant**

The trial court did not abuse its discretion in a capital resentencing by admitting evidence concerning the punishment defendant received for an infraction of prison rules where defendant argued that the evidence may have left the jury with the impression that defendant was not subject to any real control in prison because the punishment may have been viewed as too light, but defense counsel had presented evidence that defendant has and will likely perform well in a structured environment. The testimony was relevant to prove that defendant had not performed well and was not likely to perform well.

**Am Jur 2d, Criminal Law §§ 598, 599.**

14. **Jury § 222 (NCI4th)— capital resentencing—jurors excused—opposition to death penalty**

The trial court did not err in a capital resentencing by striking two jurors because they would be unable to consider a sen-

tence of death where one juror stated that he would not be able to stand in open court and state that he had so voted and the entire transcript of his responses to the court, the prosecutor, and defense counsel provides clear support for the decision to grant the prosecutor's motion to strike him from the jury for cause. The second juror plainly indicated that she did not believe she could impose a death sentence and that her personal beliefs would substantially impair her ability to fairly and impartially apply the law. A prospective juror's bias against the death penalty need not be proven with unmistakable clarity; instead, the record need only contain sufficient evidence to provide the court with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law and the trial court's decision as to the juror's ability to follow the law is entitled to deference.

**Am Jur 2d, Jury § 279.**

**15. Criminal Law § 1402 (NCI4th Rev.)— death sentence—not disproportionate**

A sentence of death was not disproportionate where the evidence supported each aggravating circumstance found; the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; and this case is distinguishable from each of the seven cases in which the sentence of death was found disproportionate. This defendant was convicted on the theory of premeditation and deliberation and felony murder whereas in three of the seven disproportionate cases the defendant either pled guilty or was convicted solely of felony murder; a finding of premeditation indicates a more cold-blooded and calculated crime; multiple aggravating circumstances were found in only two of the disproportionate cases (a previous statement that multiple aggravating circumstances were found in only one disproportionate case was incorrect); this case is distinguishable from both of those cases in that the jury in one did not find the especially heinous, atrocious, or cruel aggravating circumstance, while that circumstance was found here, and the defendant in the other disproportionate case immediately exhibited remorse and concern for the victim's life, going into the hospital to secure medical help and voluntarily speaking to police and admitting shooting the victim, unlike this defendant. Finally, while juries have imposed sentences of life imprisonment in several robbery-murder cases which are similar to the present

case, many of those involved robbery-murders at convenience stores or the defendant's impaired ability to appreciate the criminality of his conduct. The victim here was murdered in the sanctity of her own home and there was no evidence of any impairment of defendant's ability to appreciate the criminality of his conduct.

**Am Jur 2d, Criminal Law § 628.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by DeRamus, J., on 1 September 1995 in Superior Court, Iredell County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 15 May 1997.

*Michael F. Easley, Attorney General, by Thomas J. Ziko and Ellen Scouten, Special Deputy Attorneys General, for the State.*

*Rudolf & Maher, P.A., by Thomas K. Maher, for defendant-appellant.*

ORR, Justice.

On 14 March 1988, defendant was indicted for first-degree burglary, robbery with a dangerous weapon, and first-degree murder. Defendant pled guilty to the burglary and robbery charges against him. At trial, the jury found defendant guilty of first-degree murder based on the theory of premeditation and deliberation and the felony murder theory and recommended a sentence of death. Defendant was subsequently sentenced to consecutive forty-year sentences for the burglary and robbery convictions and to death for the first-degree murder conviction. On appeal, this Court found no error in the convictions. However, the Court ordered a new sentencing proceeding on the first-degree murder conviction based on the United States Supreme Court's decision in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *State v. Adams*, 335 N.C. 401, 439 S.E.2d 760 (1994). At the new capital sentencing proceeding, the jurors once again returned a recommendation of death. In accordance with the jury's recommendation, Judge Judson D. DeRamus imposed a sentence of death. Defendant appeals as of right from this sentence.

A detailed summary of the evidence introduced during defendant's original trial is set forth in our prior opinion on defendant's direct appeal, in which the majority of this Court found no error in

defendant's trial. *Id.* Except where necessary to develop and to determine the issues presented to this Court arising from defendant's resentencing proceeding, we will not repeat the evidence supporting defendant's conviction.

After consideration of the assignments of error brought forward on appeal by defendant and a thorough review of the transcript of the proceedings, the record on appeal, the briefs, and oral arguments, we conclude that defendant received a fair sentencing proceeding, free from prejudicial error. For the reasons set forth below, we affirm his sentence.

## I.

[1] In his first assignment of error, defendant contends that the trial court erred by allowing the State to disregard a factual stipulation and pursue aggravating circumstances not found at defendant's first sentencing proceeding. Defendant argues that this ruling violated his constitutional right to due process and right to confront the witnesses against him. Defendant also argues that his right not to be subjected to double jeopardy precluded the submission of aggravating circumstances not submitted or supported at the first sentencing proceeding.

## A.

We will first address defendant's contention that the trial court erred by allowing the State to disregard a factual stipulation entered into at defendant's prior sentencing hearing. Defendant argues that the trial court's ruling was based on an erroneous application of this Court's holding in *State v. Case*, 330 N.C. 161, 410 S.E.2d 57 (1991). We disagree.

At defendant's first trial, defendant made a motion to prohibit the prosecutor from making any references to rape or attempted rape. Judge Lewis subsequently made a ruling which prohibited the prosecutor from mentioning rape or attempted rape of the victim during jury selection, but reserved a final ruling for a later stage of the trial. At the conclusion of jury selection, the prosecutor and counsel for defense announced that they had agreed to a stipulation which would eliminate the need for the trial court to rule on defendant's motion. The parties stipulated as to the time of death and manner of death and also that there was insufficient evidence to prove that defendant had an intent to rape the victim when he entered the building or that he actually raped her. Further, over the State's objection, the words

STATE v. ADAMS

[347 N.C. 48 (1997)]

"sex" and "rape" were deleted from a handwritten note which was introduced at trial. Pursuant to the stipulation and Judge Lewis' ruling, no evidence of defendant's intent to rape the victim was introduced at trial.

Prior to defendant's resentencing proceeding, defense counsel filed a motion to prevent the prosecutor from alluding to rape or attempted rape at the resentencing proceeding. At a hearing on this motion, the prosecutor stated that there was evidence of attempted rape and that it was her duty, consistent with this Court's holding in *State v. Case*, 330 N.C. 161, 410 S.E.2d 57, to present such evidence to the jury at the resentencing because it would support an aggravating circumstance. The trial judge at the resentencing proceeding, Judge DeRamus, denied defendant's motion and ruled that the stipulation, entered into at defendant's previous trial, appeared to be against public policy as stated in *Case* and that the trial court did not consider any of the parties to be bound by this stipulation.

Based on the trial court's ruling, the State introduced the note, written by defendant several days before the murder, in which defendant stated that he intended to rape the victim. The note was introduced without the deletion of the words "sex" and "rape." Based on that evidence, along with the evidence of the position of the victim's body and clothing found at the crime scene, the trial court submitted the aggravating circumstance that the murder occurred during the commission of a burglary with intent to commit rape. N.C.G.S. § 15A-2000(e)(5) (Supp. 1996).

This Court was asked to determine a similar issue in *State v. Case*. In that case, the prosecutor agreed to present evidence of only one aggravating circumstance as part of a plea bargain. This Court held that it was error for the State to agree not to submit aggravating circumstances which could be supported by the evidence. *Case*, 330 N.C. at 163, 410 S.E.2d at 59. We stated that

[i]f our law permitted the district attorney to exercise discretion as to when an aggravating circumstance supported by the evidence would or would not be submitted, our death penalty scheme would be arbitrary and, therefore, unconstitutional. Where there is no evidence of an aggravating circumstance, the prosecutor may so announce, but this announcement must be based upon a genuine lack of evidence of any aggravating circumstance.

*Id.* at 163, 410 S.E.2d at 58-59. Accordingly, this Court ordered a new trial and stated that "neither the State nor the defendant will be bound by the plea bargain previously made." *Id.* at 164, 410 S.E.2d at 59.

In the present case, the prosecutor at defendant's first sentencing hearing stipulated that there was insufficient evidence to prove that defendant had an intent to rape the victim when he entered the building or that he actually raped her. Defendant contends that because the stipulation was based upon the prosecutor's belief that there was a genuine lack of evidence, the stipulation should be enforceable. However, the genuine belief of the previous prosecutor that there was a lack of evidence to support an aggravating circumstance cannot bind the State at a resentencing proceeding where the prosecutor at the resentencing has evidence to support the aggravating circumstance previously withheld. This Court has held that a concession by the State that facts it was asserting did not support an aggravating circumstance "cannot prevail if the evidence before the court does in fact support that aggravating circumstance." *State v. Gaines*, 332 N.C. 461, 475, 421 S.E.2d 569, 576 (1992), *cert. denied*, 507 U.S. 1038, 123 L. Ed. 2d 486 (1993). Thus, the trial court correctly ruled that the district attorney should not be bound by the stipulation entered into at defendant's previous trial.

## B.

[2] We next address defendant's contention that the trial court's ruling deprived defendant of his right to confront the witnesses against him. In his brief, defendant notes that the State could have called Dr. Scharyj, who performed the autopsy on the victim, to testify during defendant's trial. Defendant then would have had the opportunity to cross-examine him to establish that the victim died quickly. Instead, the State stipulated to the facts and circumstances of the victim's death, and defendant waived his right to confront the witness against him. Defendant argues that because Dr. Scharyj, who performed the autopsy on the victim, was deceased at the time of the resentencing and could not be cross-examined, defendant's due process rights were violated by allowing testimony concerning the results of the autopsy report.

During defendant's resentencing hearing, the results of the autopsy report were admitted through the testimony of Dr. Lantz. Dr. Lantz's testimony was based on the autopsy report prepared by Dr. Scharyj and on the autopsy photographs. Defendant was able to fully

cross-examine Dr. Lantz and bring out opinions favorable to him. Additionally, certain evidence contained in the stipulation pertaining to the circumstances of the victim's death was not accurate. For example, the stipulation provided that the victim had a "cut on the throat," while Dr. Lantz testified, based on Dr. Scharyj's report and the autopsy photographs, that there were multiple cuts to the throat. Further, there was some disagreement concerning when loss of consciousness would have occurred. As previously noted, defendant was not entitled to rely on this stipulation because it was not supported by the evidence and because the prosecutor cannot be precluded from presenting evidence that supports an aggravating circumstance. Accordingly, the trial court did not err by permitting Dr. Lantz to testify.

## C.

[3] Next, we address defendant's contention that defendant's right not to be subjected to double jeopardy precluded the submission of aggravating circumstances not submitted or supported at the first capital sentencing proceeding. Defendant argues that under the stipulated facts from the previous trial, there was insufficient evidence to support aggravating circumstances relating to the manner of death or relating to any claim that defendant had raped the victim. Defendant contends that having failed to introduce sufficient evidence on these points during the previous trial, the State was barred from putting defendant in jeopardy on these issues in the second sentencing proceeding and should also have been barred from introducing otherwise inadmissible evidence to support these factors.

Defendant relies on this Court's decision in *State v. Silhan*, 302 N.C. 223, 275 S.E.2d 450 (1981), as support for his contention. However, in *State v. Sanderson*, 346 N.C. 669, 488 S.E.2d 133, this Court recently modified its interpretation of double jeopardy principles in light of the United States Supreme Court's decisions in *Poland v. Arizona*, 476 U.S. 147, 90 L. Ed. 2d 123 (1986), and *Bullington v. Missouri*, 451 U.S. 430, 68 L. Ed. 2d 270 (1981). In *Sanderson*, we stated:

> In accordance with the principles discussed in [*Poland* and *Bullington*], we conclude that jeopardy attaches in a capital sentencing proceeding for purposes of double jeopardy analysis only after there has been a finding that no aggravating circumstance is present. To the extent that our opinion in *Silhan* can be read as supporting any other rule, it is inconsistent with the more recent

decision of the United States Supreme Court in *Poland* and must no longer be considered authoritative on this point.

346 N.C. at 679, 488 S.E.2d at 138, slip op. at 10.

In the present case, during defendant's first sentencing proceeding, the following three aggravating circumstances were submitted by the trial court and found by the jury: (1) Was this murder committed for the purpose of avoiding a lawful arrest? (2) Was this murder committed while the defendant was engaged in the commission of first-degree burglary? (3) Was this murder committed for pecuniary gain? As we stated in *Sanderson*, "jeopardy attaches in a capital sentencing proceeding for purposes of double jeopardy analysis only after there has been a finding that no aggravating circumstance is present." *Id.* Because three aggravating circumstances were submitted and found at the previous sentencing proceeding, it was not a violation of defendant's due process rights for the trial court to submit aggravating circumstances not submitted at the first sentencing proceeding. Further, a review of the record reveals that the aggravating circumstances which were submitted were supported by the evidence. Accordingly, defendant's right to be free of double jeopardy was not violated, and this assignment of error is overruled.

## II.

[4] Defendant also contends that the trial court committed reversible error by refusing to instruct the jury that the mitigating circumstances unanimously found by the jury at his first sentencing proceeding were established as a matter of law. Defendant argues that the trial court's refusal to instruct the jury that these mitigating circumstances must be considered violated defendant's rights under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and the corresponding provision of the North Carolina Constitution, N.C. Const. art. I, § 19. Defendant further argues that the failure of the trial court to so instruct violated the constitutional doctrine of collateral estoppel. We disagree.

In *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469 (1970), the United States Supreme Court addressed the issues of double jeopardy and collateral estoppel. The Court was asked to determine whether the State may prosecute a defendant a second time for armed robbery where the jury at defendant's first trial found the State did not meet its burden of proof on the issue of identifying defendant as one of the perpetrators. In *Ashe*, the Court held that prior acquit-

tal of an essential issue precludes the State, on double jeopardy grounds, from trying defendant on that issue again. In its analysis, the Supreme Court also defined the doctrine of collateral estoppel as follows: "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 25 L. Ed. 2d at 475. In *State v. Warren*, 313 N.C. 254, 328 S.E.2d 256 (1985), this Court recognized the *Ashe* holding and noted that "[e]mbodied within the prohibition against double jeopardy is the concept of collateral estoppel." *Id.* at 264, 328 S.E.2d at 263. This Court stated, " 'Collateral estoppel' means that once an issue of ultimate fact has been determined by a valid and final judgment, that issue may not be relitigated by the same parties in a subsequent action." *Id.*

Subsequently, in *Bullington v. Missouri*, 451 U.S. 430, 68 L. Ed. 2d 270, the United States Supreme Court held that a defendant sentenced to life imprisonment at a capital sentencing proceeding is protected by the Double Jeopardy Clause against imposition of the death penalty in the event that he obtains reversal of his conviction and is retried and reconvicted. At that time, the United States Supreme Court had yet to address the issue of whether the Double Jeopardy Clause applied to individual aggravating and mitigating circumstances.

However, as noted above, in *Poland v. Arizona*, 476 U.S. 147, 90 L. Ed. 2d 123, the United States Supreme Court was asked to determine whether the Double Jeopardy Clause applies to individual aggravating circumstances in a capital sentencing proceeding. The Court stated that it did not "view the capital sentencing hearing as a set of mini-trials on the existence of each aggravating circumstance." *Id.* at 156, 90 L. Ed. 2d at 132. The Court noted that "the judge's finding of any particular aggravating circumstance does not of itself 'convict' a defendant (i.e., require the death penalty), and the failure to find any particular aggravating circumstance does not 'acquit' a defendant (i.e., preclude the death penalty)." *Id.* at 156, 90 L. Ed. 2d at 132-33. The Court went on to hold that the rejection of an aggravating circumstance "was not an 'acquittal' of that circumstance for double jeopardy purposes" and that the Double Jeopardy Clause did not prohibit its use at a second sentencing hearing. *Id.* at 157, 90 L. Ed. 2d at 133. Similarly, it follows that the Double Jeopardy Clause does not apply to preclude relitigation of the existence of mitigating circumstances.

STATE v. ADAMS

[347 N.C. 48 (1997)]

Based on the above analysis, it is clear that the trial court did not err by refusing to instruct the jury that the mitigating circumstances found at the previous sentencing proceeding were established as a matter of law. Accordingly, this assignment of error is overruled.

## III.

[5] Next, defendant contends that the trial court committed reversible constitutional error by excluding evidence of defendant's remorse. Defendant argues that because this sentencing proceeding took place almost eight years after the murder, the evidence of remorse is important to establish defendant was "remorseful at the time of the offense, and was not simply arguing remorse as a way of avoiding the death penalty." Defendant argues that this evidence was admissible and that the trial court's exclusion of it entitles defendant to a new trial. We disagree.

We note that defendant did not properly preserve this alleged error by any action taken at trial or by specifically and distinctly arguing plain error. *See State v. Frye*, 341 N.C. 470, 496, 461 S.E.2d 664, 677 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 526 (1996). Notwithstanding defendant's failure to preserve this issue for appeal, "in the exercise of our discretion under Rule 2 of the Rules of Appellate Procedure and following the precedent of this Court electing to review unpreserved assignments of error in capital cases, we elect to consider defendant's contention under a plain error analysis." *State v. Gregory*, 342 N.C. 580, 586, 467 S.E.2d 28, 32 (1996).

In the present case, during defense counsel's direct examination of defendant's father, Mickey Adams, the following exchange occurred:

Q. What was Tommy's condition when you arrived at the Mocksville Jail, sir, and you first saw him?

A. Well, when we got up there, he was crying and telling us how sorry he was, that all this out—

[THE PROSECUTOR]: Object and move to strike.

[THE COURT]: Sustained to the statements of the defendant, members of the jury, as testified to by this person. You may consider the testimony of this witness as to crying; overruled in that respect.

STATE v. ADAMS

[347 N.C. 48 (1997)]

Defendant states in his brief that the trial court apparently believed that this evidence was hearsay and, thus, inadmissible. However, defendant notes that even if the witness' statement was hearsay, relevant mitigating evidence cannot be excluded at a sentencing hearing based upon hearsay rules. *Green v. Georgia*, 442 U.S. 95, 97, 60 L. Ed. 2d 738, 741 (1979).

We agree with defendant that relevant mitigating evidence cannot be excluded at a sentencing hearing based upon evidentiary rules. However, as defendant concedes, the testimony must be relevant to defendant's character or record and the circumstances of the offense. Here, defendant failed to except to the trial court's ruling and also failed to preserve for the record what the witness would have testified to had he been permitted to complete his answer. These omissions are dispositive of this issue because " '[a]n exception to the exclusion of evidence cannot be sustained when the record fails to show what the witness would have testified had he been permitted to answer.' " *State v. McCoy*, 303 N.C. 1, 27, 277 S.E.2d 515, 533 (1981) (quoting *State v. Fletcher*, 279 N.C. 85, 99, 181 S.E.2d 405, 414 (1971)). Because the witness' answer was not preserved, we have no way of knowing what defendant was "sorry about" and cannot determine whether the excluded testimony is relevant mitigating evidence. Accordingly, this assignment of error is overruled.

## IV.

[6] Defendant also contends that the trial court erred by refusing to grant a mistrial when the State allegedly elicited testimony that defendant had previously been sentenced to death. Defendant argues that once the jury learned that he had been previously sentenced to death, his chances of receiving a fair trial were "greatly reduced," and the trial court should have granted a mistrial. We disagree.

During his case-in-chief, defendant called Lieutenant Barbara Hoffner, assistant unit manager of the hospital at Central Prison, as a witness. Lieutenant Hoffner testified that she was assigned to work at the hospital on 1 March 1995 and met defendant shortly thereafter. She further testified that she had supervised defendant's work and that he was a "pleasant person" who did not require as close supervision as other inmates. Lieutenant Hoffner had never had problems with defendant and had never had to reprimand defendant.

During the prosecutor's cross-examination of Lieutenant Hoffner, the following exchange occurred:

Q. How long have you known [defendant]?

A. Since he came back from court, or wherever he magically appeared from, after I started there on March the 1st.

Q. And you never knew him in any of your duties prior to March the 1st of 19—

A. Other than his name and the fact that he was a smaller fellow in a red jump suit.

Q. So you saw him?

A. When he was on death row, yes, ma'am.

After the jury had been excused for lunch, defense counsel moved for a mistrial on the grounds that the district attorney deliberately pursued a line of questioning regarding Lieutenant Hoffner's prior knowledge of defendant with the intent of eliciting testimony that defendant had previously been on death row.

After hearing arguments from both the prosecutor and defense counsel on the motion for a mistrial, the trial court denied the motion. In denying the motion, the trial court found "from its observations that the response about [the witness'] observation on death row was not elicited by the State." The trial court further noted that the reference to death row was made in a "fairly offhand way without the intent to emphasize it to the jury." The prosecutor then requested that the record reflect "that before this woman took the witness stand [the prosecutor] had never seen her before." Defense counsel subsequently refused the trial court's offer of any curative instruction because, as stated in defendant's brief, "the damage was already irreparable, and any further instruction would only serve to emphasize defendant's prior death sentence."

Defendant relies on State v. Britt, 288 N.C. 699, 220 S.E.2d 283 (1975), as support for his contention that the witness' comment entitles him to a new sentencing hearing. In Britt, this Court found that the prosecutor improperly questioned defendant in a manner that elicited testimony that defendant had been previously sentenced to death and that this Court had ordered a new sentencing hearing. Defendant, however, concedes in his brief that there is no per se rule in North Carolina that a mistrial is always the appropriate remedy when jurors in a capital resentencing hearing learn of a prior death sentence.

STATE v. ADAMS

[347 N.C. 48 (1997)]

In *State v. Spruill*, 338 N.C. 612, 452 S.E.2d 279 (1994), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 63 (1995), this Court held that the district attorney's inadvertent reference to defendant's presence on death row did not warrant a new sentencing hearing. Defendant attempts to distinguish *Spruill* by noting that in that case, defense counsel did not object or move for mistrial, but rather, the prosecutor brought to the attention of the court the fact that defendant's prior sentence had been mentioned. Thus, defendant contends "the impact on the jury was probably the same as the impact on defense counsel, and the exposure to this information was truly accidental."

However, we are not persuaded by defendant's argument that the "holding in *Britt* should be extended to cases such as this, in which the prosecutor may not have desired to bring out this information, but nonetheless persisted in a line of question[ing] that had a high risk of eliciting this information." An examination of the facts of this case leads us to the conclusion that this case is more similar to *Spruill* than to *Britt*. In *Spruill*, this Court distinguished *Britt* as follows:

> First, the prosecutor made only one mention of death row, and the record makes clear that it was inadvertent. Second, when the remark was made, it went unnoticed by defense counsel or the court and so was never brought to the jury's attention by way of an objection or limiting instruction. Third, defendant did not move for a mistrial. Fourth, from the testimony of Dr. Groce, the prison chaplains, and a prison guard, it was clear that defendant had been in prison since 1984. From this evidence the jury could have inferred already that defendant had previously been sentenced to death; otherwise, he would not be receiving a new capital sentencing hearing.

*Id.* at 645, 452 S.E.2d at 296-97. This Court went on to conclude that "[i]n light of all the circumstances, we cannot say that the prosecutor's inadvertent comment constituted a transgression so gross or highly prejudicial that it alone constituted the source of adverse impression, if any, in the minds of the jurors." *Id.* at 645-46, 452 S.E.2d at 297.

All of the circumstances on which this Court based its decision are present in this case, except for the fact that the witness' remark did not go unnoticed by defense counsel and defendant did move for a mistrial. Here, the witness made only one mention of death row, and the record indicates it was inadvertent. Also, several witnesses

testified concerning defendant's behavior in prison. Thus, it was clear to the jury that defendant had been in prison, and from this evidence, the jury could have inferred that defendant had previously been sentenced to death. However, the most important distinction in this case, which sets it apart from both *Spruill* and *Britt*, is the fact that the remark came from a defense witness rather than the prosecutor. An examination of the record reveals that it was impossible for the prosecutor to foresee that her question, "So you saw him?" would elicit a response that not only had the witness seen him, but she saw him on death row. It does not appear from the record that the prosecutor had any improper motive for asking this question or that it was an intentional attempt to elicit the fact that defendant had been on death row. In fact, the record reflects that the prosecutor had not had any contact with the witness prior to trial.

The trial court is required to declare a mistrial upon a defendant's motion "if there occurs during the trial . . . conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (1988). It is within the trial court's discretion to determine whether to grant a mistrial, and the trial court's decision is to be given great deference because the trial court is in the best position to determine whether the degree of influence on the jury was irreparable. *State v. Williamson*, 333 N.C. 128, 423 S.E.2d 766 (1992). Here, the remark made by the witness concerning seeing defendant on death row did not result in substantial and irreparable prejudice to defendant's case. Accordingly, the trial court did not err by refusing to grant defendant's motion for a mistrial. This assignment of error is overruled.

## V.

[7] In his next assignment of error, defendant contends that the trial court erred by denying his motion for a mistrial following jurors' questions concerning defense counsel's integrity. Defendant argues that the fact that jurors questioned defense counsel's integrity made it impossible for them to give defendant a fair trial. We do not agree.

During defense counsel's cross-examination of Jerry Williams, a detective with the Davie County Sheriff's Department at the time of the offense, counsel picked up the pants defendant had been wearing at the time of the offense. As defense counsel was examining the pants, some rolling papers fell out of the pocket. During the next recess, the bailiff informed the trial court that Juror Nine, Dale

**STATE v. ADAMS**

[347 N.C. 48 (1997)]

Brown, wanted to know if he could ask a question regarding the rolling papers. Brown was brought into the court for questioning and stated that he had questions about how the rolling papers fell out of the pants, suggesting that defense counsel might have planted them there. He further stated that he had not discussed his feelings with other jurors, but that he thought the idea was "on their minds."

An inquiry into the matter occurred with discussion among the trial court and counsel for both parties. The prosecutor was eventually able to establish that references to the rolling papers were included in the lab notes made by SBI Agent Bendure during his examination of the pants on 19 January 1988. However, no official record of that evidence had been made. The trial court then allowed the prosecutor to explain to the jury that the evidence had been in the pants since January 1988 and to give a personal "testimonial" on behalf of all the attorneys.

After the jury had returned to the courtroom, the prosecutor stated that during prior examinations of the pants, neither she nor defense counsel had searched the pocket. She further stated that, while the official lab report from the SBI makes no mention of the items, during the recess an SBI agent had informed them that his lab notes contained references to the rolling papers. In concluding, the prosecutor informed the jury that "it is clear that those items were in those pants pockets at the time that they were seized and for the past seven and a-half-years." The trial judge then informed the jurors that he had known defense counsel for at least fifteen years and stated that none of the attorneys involved in the case would

> try to manipulate or alter evidence or plant evidence in any fashion whatsoever, and to the extent that it's [sic] been any suggestion of that raised in the jury room, the Court wants to be sure that all jurors who are hearing this case can, in the absence of any evidence to indicate that, keep any such speculation of that out of their minds.

The trial judge then proceeded to ask the jurors whether any of them felt they could not be fair to the State or the defense. Each juror indicated that he or she could be fair and had no questions concerning his or her ability to be fair. Finally, defense counsel was allowed to inform the jury that Mr. Bingham, who had picked up the pants, had not been involved with the case until 1994. Defense counsel subsequently moved for a mistrial based upon the fact that jurors had questioned his integrity, making it impossible for defendant to

receive a fair trial. After hearing arguments from both sides, the trial court denied the motion.

As noted above, the trial court is required to declare a mistrial upon a defendant's motion "if there occurs during the trial . . . conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061. "The trial court's decision in this regard is to be afforded great deference since the trial court is in a far better position than an appellate court to determine whether the degree of influence on the jury was irreparable." *State v. King*, 343 N.C. 29, 44, 468 S.E.2d 232, 242 (1996).

In considering the context of the entire incident, including the statements made by both counsel to the jury and the trial court's inquiry of the jury, we believe the trial court was able to avoid any "substantial and irreparable prejudice to the defendant's case." The record reflects that the trial court effectively addressed questions regarding defense counsel's handling of the evidence by directing the prosecutor to present evidence to the jury absolving defense counsel of any wrongdoing. Further, the trial court instructed the jurors to keep "any such speculation of [evidence tampering] out of their minds." When the trial court instructs the jury not to consider incompetent evidence, any prejudice is ordinarily cured. *State v. Black*, 328 N.C. 191, 200, 400 S.E.2d 398, 404 (1991). Finally, under questioning from the trial court, all the jurors indicated that they could and would treat the parties fairly. Accordingly, this assignment of error is overruled.

## VI.

[8] Next, defendant contends that the trial court erred by failing to give adequate peremptory instructions on a statutory mitigating circumstance and several nonstatutory mitigating circumstances. First, defendant contends that the trial court erred in failing to give an adequate peremptory instruction on the statutory mitigating circumstance N.C.G.S. § 15A-2000(f)(2), that defendant acted under the influence of a mental or emotional disturbance. Defendant argues that the inadequacy of the instruction constituted error and thus entitled defendant to a new sentencing hearing. We do not agree.

At trial, defendant requested a peremptory instruction be given concerning the (f)(2) mitigating circumstance, and the trial court complied with his request by giving the following instruction:

STATE v. ADAMS

[347 N.C. 48 (1997)]

Second, members of the jury, "Consider whether this murder was committed while the defendant was under the influence of mental or emotional disturbance."

A defendant is under such influence if he is in any way affected or influenced by a mental or emotional disturbance at the time he kills. You would find this mitigating circumstance if you find the defendant was under the influence of mental or emotional disturbance when he killed the victim.

The defendant has the burden of establishing this mitigating circumstance by the preponderance of the evidence, as I explained to you. According to this mitigating circumstance, I charge if one or more of you find the facts to be as all the evidence tends to show, you will answer "yes" as to Mitigating Circumstance Number Two on the Issues and Recommendation form.

If none of you finds this circumstance to exist, as all the evidence tends to show, you would so indicate by having your foreman write "no" in that space.

Defendant did not object to the above instruction at the sentencing hearing and argues for the first time, on appeal, that the peremptory instruction given by the judge on this circumstance failed to make clear the uncontroverted nature of the evidence. When defendant fails to object to a jury instruction at trial, the plain error standard is applied. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). To demonstrate plain error, defendant must show "that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993). In the present case, defendant has failed to meet this burden.

"A peremptory instruction tells the jury that if it finds that the facts exist as all the evidence tends to show, it will answer the question put to it in the manner directed by the trial court." *State v. Carter*, 342 N.C. 312, 322, 464 S.E.2d 272, 279 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 957 (1996). However, even when peremptorily instructed, jurors have the right to reject the evidence if they question its credibility. *State v. Huff*, 325 N.C. 1, 59, 381 S.E.2d 635, 669 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990).

This Court has approved an instruction almost identical to the instruction defendant assigns as error. In *State v. Carter*, the trial court's instruction concerning two statutory mitigating circumstances read: "[A]s to this mitigating circumstance, I charge you that if one or more of you finds the facts to be as all the evidence tends to show, you will answer yes." *Carter*, 342 N.C. at 322, 464 S.E.2d at 279. This Court stated that the instruction "properly left the credibility determination to the jury and permitted individual jurors to disbelieve the evidence if they so chose." *Id.* Further, it was noted that the instruction was in conformity with the North Carolina Pattern Instructions relating to peremptory instructions for mitigating circumstances and fairly represented applicable legal principles. *Id.*

In the present case, the instruction properly allowed the jury to determine the credibility of the evidence presented and also conformed with the North Carolina Pattern Instructions. *See* N.C.P.I.— Crim. 150.10 (1997). Thus, we find no error, much less plain error, in the trial court's instructions.

[9] Defendant also contends that the trial court erred in refusing to give peremptory instructions on the following nonstatutory mitigating circumstances: (1) defendant's remorse, (2) defendant's relationship with his family, and (3) defendant's level of immaturity. Defendant contends he was prejudiced by the failure to give the requested peremptory instruction and is entitled to a new sentencing hearing. Once again, we do not agree.

This Court has held that a trial court should, if requested, give a peremptory instruction for any mitigating circumstance, whether statutory or nonstatutory, if it is supported by uncontroverted and manifestly credible evidence. *State v. Green*, 336 N.C. 142, 172-74, 443 S.E.2d 14, 32-33, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). In the present case, the State contends that the evidence was not uncontroverted as to each of the following nonstatutory mitigating circumstances and that the trial court did not err by refusing to instruct on them.

First, defendant contends that the jury should have been peremptorily instructed as to his remorsefulness for the crimes he committed. Defendant argues that testimony from his family members supported this nonstatutory mitigating circumstance. However, the testimony tended to show that defendant was remorseful for having hurt his family and the effect his conduct was going to have on his own life, rather than remorsefulness for having committed the

STATE v. ADAMS

[347 N.C. 48 (1997)]

crimes. Further, as the trial court noted, "there's always an ambiguous nature to expressions of sorrow and requests for forgiveness." The evidence presented did not clearly demonstrate that defendant was sorry he took the victim's life. Accordingly, the trial court did not err in refusing to instruct the jury on defendant's remorsefulness, as the evidence was not uncontroverted.

[10] Defendant also sought a peremptory instruction concerning his relationship with his family. Defendant requested that the jury be instructed that defendant generally has maintained a good and loving relationship with his parents and other family members. In refusing to give the requested instruction, the trial court noted that while a relationship had been maintained between defendant and his family, there was some question as to whether it was defendant or his family who had maintained the relationship. Both defendant's mother and father testified concerning defendant's quitting school and the pain and expense defendant's criminal activities had cost the family. Further, his mother testified that there is a lot that defendant had done which they would never understand. Therefore, the evidence as to this nonstatutory mitigating circumstance was controverted, and defendant was not entitled to the requested peremptory instruction.

[11] Finally, defendant contends that the jury should have been peremptorily instructed that he had a "level of maturity that would reduce his culpability for the murder." The evidence presented showed that defendant had earned his GED by the time he was seventeen and that he had a stable, loving home and family. *See State v. Richardson*, 342 N.C. 772, 790, 467 S.E.2d 685, 696 (evidence that defendant came from a stable background and had performed competently in school controverted claim that defendant was immature), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 160 (1996). Evidence also showed that defendant had planned the crime for at least a couple of days and had a prior criminal record for several breaking and enterings. Thus, the evidence concerning defendant's level of maturity was not uncontroverted, and he was not entitled to the requested peremptory instruction.

## VII.

[12] Defendant also contends that the trial court erred in admitting irrelevant and prejudicial testimony. First, defendant assigns as error the admission of Dr. Lantz's testimony that the victim may have survived if treated. Defendant argues that he had no reason to realize that medical attention could have saved the victim and that, unless a

defendant knows that the victim could have been saved, the testimony has no relevance to any issue before the jury.

Defendant alleges this error for the first time on appeal under the plain error rule, which holds that errors or defects affecting substantial rights may be addressed even though they were not brought to the attention of the trial court. *Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the . . . mistake had a probable impact on the jury's finding that the defendant was guilty."

*Id.* (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). Although *Odom* dealt with jury instructions, we have applied the plain error rule to the admission of evidence. *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 806 (1983).

The Rules of Evidence do not apply in sentencing proceedings. N.C.G.S. § 8C-1, Rule 1101(b)(3) (1992). Any evidence the court "deems relevant to sentence" may be introduced at this stage. N.C.G.S. § 15A-2000(a)(3). The State "must be permitted to present *any* competent, relevant evidence relating to the defendant's character or record which will substantially support the imposition of the death penalty." *State v. Brown*, 315 N.C. 40, 61, 337 S.E.2d 808, 824 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988).

In defendant's own statement to law enforcement officers, defendant stated that he continued to stab the victim, but "she wouldn't die." He further stated that the victim slowly bled to death. Thus, Dr. Lantz's testimony that the victim's wounds were not immediately fatal and that the victim may have survived with treatment

serve to corroborate defendant's statements to law enforcement officers. Further, whether death is immediate or delayed is relevant to whether the crime was especially heinous, atrocious, or cruel. *State v. Hines*, 314 N.C. 522, 335 S.E.2d 6 (1985). Accordingly, this is not the exceptional case where, after reviewing the entire record, we can say that the claimed error is so fundamental that justice could not have been done.

**[13]** Defendant also contends that the trial court erred in admitting testimony, over defendant's objection, concerning the punishment defendant received for an infraction of prison rules. Defendant argues that the punishment, which was twenty days of disciplinary segregation, twenty days' loss of good time, and thirty hours of extra duty, may have left the jury with the impression that defendant was not subject to any real control in prison because the punishment may have been viewed as too light.

Evidence of defendant's ability to " 'adjust well to prison life' " is proper evidence in mitigation. *State v. Rouse*, 339 N.C. 59, 451 S.E.2d 543 (1994) (quoting *State v. Ali*, 329 N.C. 394, 421, 407 S.E.2d 183, 199 (1991)), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 60 (1995). Defense counsel presented evidence to show that "the defendant has and will likely perform well in a structured environment" by eliciting testimony from two Central Prison employees. In an effort to rebut the testimony of the employees, the prosecution presented testimony from a lieutenant at Central Prison who held a disciplinary hearing on the charge that defendant illegally possessed a homemade knife. This testimony was relevant, as it tended to prove that defendant had not performed well and was not likely to perform well in prison, and the trial court did not abuse its discretion in overruling defendant's objection. Accordingly, this assignment of error is without merit.

## VIII.

**[14]** Defendant next contends that the trial court erred in striking two jurors on the grounds that they would be unable to follow the law and consider a sentence of death. Defendant argues that the State failed to establish that the jurors' views on capital punishment would prevent or impair the performance of their duties and that the exclusion of these jurors violated defendant's constitutional rights. We do not agree.

Jurors who express opposition to the death penalty may be removed for cause in capital cases if their opposition would prevent

or substantially impair the performance of their duties as jurors in accordance with the trial court's instructions and the jurors' oath. *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985); *State v. Brown*, 327 N.C. 1, 14, 394 S.E.2d 434, 442 (1990). A prospective juror's bias against the death penalty need not be proven with "unmistakable clarity." *Wainwright*, 469 U.S. at 424, 83 L. Ed. 2d at 852. Instead, the record need only contain sufficient evidence to provide the trial court "with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. *Id.* at 426, 83 L. Ed. 2d at 852. Further, the trial court's decision as to the juror's ability to follow the law is entitled to deference. *Id.* at 426, 83 L. Ed. 2d at 853.

In the present case, the record shows that when questioned by the prosecutor, prospective juror Padgett stated that if he voted for the death penalty in this case, he could not stand in open court and state he had so voted. When defense counsel reminded prospective juror Padgett that he had previously told the trial court that he could fairly consider recommending a death sentence, Padgett candidly admitted, "I changed my mind." The entire transcript of prospective juror Padgett's responses to questions from the trial court, the prosecutor, and defense counsel provides clear support for the trial court's decision to grant the prosecution's motion to strike him from the jury for cause. Therefore, this assignment of error is overruled.

The second prospective juror defendant contends was improperly excused is prospective juror Posey. In response to questions from the trial court, prospective juror Posey plainly stated that she did not believe she could impose a death sentence and that her personal beliefs would substantially impair her ability to fairly and impartially apply the law. This is sufficient evidence to support the trial court's ruling that prospective juror Posey would be unable to faithfully and impartially apply the law. Accordingly, the trial court also did not err in excusing prospective juror Posey for cause.

## PRESERVATION ISSUES

Defendant raises five additional issues which he concedes have been decided contrary to his position previously by this Court: (1) the trial court committed reversible constitutional error in ruling that defendant's age at the time of the offense did not preclude imposition of the death penalty; (2) the trial court committed reversible constitutional error in refusing to give the jury the option of sentencing defendant to life without parole; (3) the trial court committed

reversible constitutional error in precluding defendant from arguing that the length of other sentences defendant was serving at the time is a basis for sentencing defendant to less than death; (4) the trial court committed constitutional error in defining the meaning of "especially heinous, atrocious, or cruel"; and (5) the trial court committed clear constitutional error in defining what constitutes mitigating circumstances.

Defendant raises these issues for purposes of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review. We have considered defendant's argument on these issues and find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY REVIEW

[15] Having found no error in defendant's sentencing proceeding, we must determine whether: (1) the evidence supports the aggravating circumstances found by the jury; (2) passion, prejudice, or any other arbitrary factor influenced the imposition of the death sentence; and (3) the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2).

In the present case, defendant was convicted of first-degree murder on the basis of malice, premeditation, and deliberation and also under the felony murder rule. The jury found the aggravating circumstances that the murder was committed to prevent arrest or effect escape, N.C.G.S. § 15A-2000(e)(4); that the murder was committed while the defendant was engaged in the commission of robbery with a dangerous weapon, N.C.G.S. § 15A-2000(e)(5); and that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). We conclude that the evidence supports each aggravating circumstance found. We further conclude, based on a thorough review of the record, that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Thus, the final statutory duty of this Court is to conduct a proportionality review.

Proportionality review is designed to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). In con-

ducting proportionality review, we determine whether "the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983); *accord* N.C.G.S. § 15A-2000(d)(2). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *Green*, 336 N.C. at 198, 443 S.E.2d at 47.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). It is also proper for this Court to compare this case with the cases in which we have found the death penalty to be proportionate. *Id.* Although we review all of these cases when engaging in this statutory duty, we will not undertake to discuss or cite all of those cases each time we carry out that duty. *Id.*

This Court has determined that the sentence of death was disproportionate in seven cases: *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); and *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

However, we find the present case is distinguishable from each of these seven cases. In three of those cases *Benson*, 323 N.C. 318, 372 S.E.2d 517; *Stokes*, 319 N.C. 1, 352 S.E.2d 653; and *Jackson*, 309 N.C. 26, 305 S.E.2d 703, the defendant either pled guilty or was convicted by the jury solely under the theory of felony murder. Here, defendant was convicted on the theory of malice, premeditation, and deliberation and also under the felony murder rule. We have said that "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

Further, multiple aggravating circumstances were found to exist in only two of the disproportionate cases. *See Young*, 312 N.C. 669, 325 S.E.2d 181; *Bondurant*, 309 N.C. 674, 309 S.E.2d 170. This Court

**STATE v. ADAMS**

[347 N.C. 48 (1997)]

has previously stated that multiple aggravating circumstances were found to exist in only one of the disproportionate cases. *See State v. Cole*, 343 N.C. 399, 471 S.E.2d 362 (1996), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 624 (1997); *State v. Walls*, 342 N.C. 1, 463 S.E.2d 738 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 794 (1996); *State v. Gregory*, 340 N.C. 365, 459 S.E.2d 638 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 478 (1996). However, we note that the above statement is incorrect and should not be considered authoritative in conducting our proportionality review. Thus, there are two disproportionate cases which contain multiple aggravating circumstances.

The present case, however, is distinguishable from both of those cases. In determining the death penalty was disproportionate in *Young*, this Court noted that the jury failed to find the especially heinous, atrocious, or cruel aggravating circumstance, N.C.G.S. § 15A-2000(e)(9). *Young*, 312 N.C. at 691, 325 S.E.2d at 194. Here, however, the jury found the especially heinous, atrocious, or cruel aggravating circumstance. In *Bondurant*, this Court found the death penalty disproportionate because the defendant immediately exhibited remorse and concern for the victim's life. The defendant went into the hospital to secure medical help for the victim, voluntarily spoke to police, and admitted shooting the victim. *Bondurant*, 309 N.C. at 694, 309 S.E.2d at 182-83. Here, the evidence showed that defendant entered the victim's house and stabbed her in the chest. Defendant admitted to police that he stabbed the victim several more times to keep her from further suffering. After killing the victim, defendant took money from her purse and fled the house. Thus, we find no significant similarity between this case and *Young* or *Bondurant*.

Several additional characteristics of this case support the determination that imposition of the death sentence was not disproportionate. In the present case, the victim was killed in her own bedroom in the middle of the night. A murder in the home "shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure." *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). Further, the elderly victim would have been no match for the physical strength of defendant, a healthy seventeen-year-old.

We recognize that juries have imposed sentences of life imprisonment in several robbery-murder cases which are similar to the

present case. However, this fact "does not automatically establish that juries have 'consistently' returned life sentences in factually similar cases." *Green*, 336 N.C. at 198, 443 S.E.2d at 47. This Court has long rejected a mechanical or empirical approach to comparing cases that are superficially similar. *State v. Robinson*, 336 N.C. 78, 139, 443 S.E.2d 306, 337 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). Many of the robbery-murder cases in which defendants were sentenced to life imprisonment involved robbery-murders at a convenience store or cases in which the jury found as a mitigating circumstance that the defendant's ability to appreciate the criminality of his conduct was impaired. *See, e.g., State v. Medlin*, 333 N.C. 280, 426 S.E.2d 402 (1993); *State v. Abdullah*, 309 N.C. 63, 306 S.E.2d 100 (1983). Here, the victim was murdered in the sanctity of her own home, and there was no evidence of any impairment of defendant's ability to appreciate the criminality of his conduct.

After reviewing the cases, we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence of death disproportionate or those in which juries have consistently returned recommendations of life imprisonment. Accordingly, we cannot conclude that defendant's death sentence is disproportionate.

Having considered and rejected all of defendant's assignments of error, we hold that defendant received a fair capital sentencing proceeding, free from prejudicial error. Comparing this case to similar cases in which the death penalty was imposed and considering both the crime and defendant, we cannot hold as a matter of law that the death penalty was excessive or disproportionate. Therefore, the sentence of death entered against defendant must be and is left undisturbed.

NO ERROR.