STATE OF NORTH CAROLINA v. JOHN KERMIT ALLEN, JR.

No. COA99-1522

(Filed 29 December 2000)

**1. Criminal Law— mistrial denied—old arrest photograph— improperly admitted**

The trial court did not err by denying a murder defendant's motion for a mistrial after the State introduced an arrest photograph of defendant taken at least ten years before the incident in this case where the State represented to the jury that the photograph was taken immediately after the victim's death to show that defendant had no scratches or bruises indicating a struggle. There is no evidence suggesting that the improper admission was intentional or that the State admitted the photograph to improperly suggest that defendant had been previously arrested, and the trial judge withdrew the evidence and provided a curative instruction.

**2. Constitutional Law— privilege against self-incrimination— refutation of old arrest photograph—testimony for another purpose**

A murder defendant was not compelled to testify by the improper admission of a ten-year-old arrest photograph in violation of his Fifth Amendment privilege against self-incrimination where defendant took the stand to put on evidence of self-defense, not to answer the State's evidence regarding prior arrests.

**3. Evidence— prior bad acts—chain of circumstances of crime**

The trial court did not err in a murder prosecution by admitting evidence that, one week before the killing, defendant had fired a gun over his mother's head, pointed a gun at his brother, and threatened to kill him. The challenged evidence was part of the chain of circumstances leading up to the victim's murder and was admissible to show defendant's state of mind in the days prior to the murder. These prior acts reveal defendant's intensifying state of violent behavior toward his family and the possibility that he was angry with the victim for confronting him about the treatment of his family.

**4. Criminal Law— limiting instruction—not requested**

The trial court did not err in a murder prosecution by not giving an immediate limiting instruction following admission of defendant's prior misconduct to show a chain of events establishing defendant's state of mind where defendant did not request such an instruction.

**5. Appeal and Error— plain error review—no supporting argument**

A murder defendant waived plain error review of whether the court erred by admitting evidence that the victim was peaceful by failing to provide argument in support of plain error.

**6. Criminal Law— outburst by victim's sister—mistrial denied**

The trial court did not abuse its discretion by not granting a mistrial in a murder prosecution after an emotional outburst by the victim's sister. The judge demonstrated the inappropriateness of the outburst by a statement to the prosecutor that those unable to control their emotions would not be allowed in the courtroom. Although defendant contends that a curative instruction should have been given, the defense attorney did not request such an instruction and it is possible that a curative instruction could have emphasized the outburst.

**7. Homicide— self-defense—duty to retreat—instruction not required**

A murder defendant was not entitled to an instruction that he had no duty to retreat where his testimony revealed a series of escalating events leading to the victim's death but did not reveal that it was actually or reasonably necessary under the circumstances to kill the victim. Therefore, defendant was required to retreat if a way of escape was open to him, and his testimony indicates that he left the altercation to go to the bathroom, a diagram of the apartment indicated that defendant was required to pass the front door, and defendant's testimony did not indicate that the front door was obstructed in any way.

Appeal by defendant from judgment entered 23 April 1999 by Judge L. Todd Burke in Wilkes County Superior Court. Heard in the Court of Appeals 8 November 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Thomas O. Lawton, III, for the State.*

*McElwee Firm, PLLC, by Kimberly C. Stevens and Elizabeth K. Mahan, for the defendant-appellant.*

LEWIS, Judge.

Defendant was tried at the 19 April 1999 session of Wilkes County Superior Court on one count of first-degree murder. On 23 April 1999, the jury returned a verdict of guilty of second-degree murder. Defendant was sentenced to a minimum of one hundred seventy-six and a maximum of two hundred twenty-one months' imprisonment. The trial court's judgment recommended a Substance Abuse Treatment Unit pursuant to N.C. Gen. Stat. § 15A-1351(h).

The State's evidence tended to show the following. On 21 December 1997, defendant shot and killed his first cousin, Mitch Grimes. In the weeks preceding Mitch's death, defendant had exhibited increasing animosity toward several members of his family, and consequently, committed several acts of violence toward his mother, brother and first cousin. Approximately one week before Mitch's death, defendant shot a gun over his mother's head and pointed a gun at his brother, threatening to kill him. Mitch reprimanded defendant for his actions several times, urging him to stop "disrespecting" his family. (1 Tr. at 279). On another occasion, Mitch came upon defendant walking past his aunt's house carrying a gun and threatening to kill his brother because he stole his money and his drugs. The victim urged defendant to put the gun away and not to kill his brother, which advice defendant heeded. In the week preceding his death, after defendant had pointed a gun at his mother and threatened his brother, the victim cut his own arm with a knife in front of the defendant, reminding him that "blood's thicker than water." (1 Tr. at 279). Apparently angered by the victim's continuing remonstrations addressing defendant's behavior toward his family, defendant called the victim on several occasions threatening to kill him.

On the day of the shooting, defendant arrived at the apartment of Robert Davenport, a friend of both defendant and Mitch. Mitch was already at Davenport's apartment. Davenport allowed defendant to enter, warning him that he wanted no trouble, to which defendant agreed. Defendant entered the apartment and after a short time, as Mitch and Davenport stood talking to one another, defendant walked

over to them, unprovoked and unsolicited, and shot Mitch in the face, killing him instantly. Davenport testified that Mitch took no action to cause any altercation—he did not punch, slap or push the defendant. Defendant admitted to killing the victim, asserting he acted in self-defense.

[1] Defendant first argues the trial court erred in denying his motion for mistrial after erroneously admitting evidence which was not disclosed during discovery, despite a proper discovery request by defendant pursuant to N.C. Gen. Stat. § 15A-903(d). The evidence was an arrest photograph of defendant taken at least ten years before the incident in this case. The State, however, represented before the jury that the photograph was taken immediately after the victim's death in order to show that defendant had no scratches or bruises tending to indicate a struggle. The State was ultimately attempting to refute defendant's claim of self-defense.

Although the trial court denied defendant's immediate motion for mistrial as a result of admitting the arrest photograph, the court withdrew the evidence and provided a curative instruction to the jury as follows:

> [T]his photograph here is not the photograph of the Defendant that was taken at the time that he was arrested. This photograph here, you should not consider it. I'm striking it from the record. It has no bearing on this case, whatsoever. The photograph was incorrectly utilized by the State for which they apologize for, but this is, it was just in the file by error or by mistake and it was shown to you. And, you're not to consider this photograph. This is an old photograph of the Defendant . . . you're not to consider this photograph. You're not to imply anything from this photograph as to how the sheriff's department got it or where it came from or what it has been used for in the past. Does everyone understand that? This is simply not a photograph of the Defendant at the time that he was arrested. Does everyone think you can block this from your mind and it not have any affect on any decision that you will make in the trial? It shouldn't because it's not the photograph. It's simply not the photograph of the Defendant at the time he was arrested. Does everyone understand? (Some jurors nod heads affirmatively; others do not respond).

(2 Tr. at 326-27).

Defendant contends the prosecution's failure to disclose the arrest photograph entitles him to a new trial. Although it does appear that the prosecution failed to comply with defendant's discovery request pursuant to N.C. Gen. Stat. § 15A-903(d), it does not necessarily follow that a court is required to prohibit the State from introducing undisclosed evidence or that a defendant is entitled to a new trial because the court permitted introduction of undisclosed evidence. *State v. Kessack*, 32 N.C. App. 536, 541, 232 S.E.2d 859, 862 (1977). N.C. Gen. Stat. § 15A-910 sets forth several remedies (including declaration of a mistrial) by which the trial court may redress a party's noncompliance with a discovery request; however, whether these remedies should be invoked is a matter within the trial court's sound discretion. *Id.*

Defendant argues that despite the trial judge's admonition to the jury not to consider the arrest photograph, the court was required to declare a mistrial since admission of the photograph ultimately implied to the jury that defendant had been arrested on a previous occasion. In *State v. Adams*, 347 N.C. 48, 65-66, 490 S.E.2d 220, 229 (1997), our Supreme Court held that a mistrial was not warranted where the State inadvertently elicited testimony from a defense witness that defendant had been previously sentenced to death. While the State was attempting to establish the length of time in which the defendant knew the testifying witness, the witness stated he knew defendant when he was on death row. *Id.* at 64, 490 S.E.2d at 228. The statement was made in a "fairly offhand way without the intent to emphasize it to the jury." *Id.* at 64, 490 S.E.2d at 228. Incidentally, the Court noted that it did not appear from the record that the prosecutor had any improper motive or that it intentionally elicited the information. *Id.* at 66, 490 S.E.2d at 229.

Likewise, in this case there is no evidence in the record suggesting the State's improper admission was intentional, or that it admitted the photograph in an attempt to improperly suggest that the defendant in this case had been previously arrested. The State's focus in admitting the photograph was the absence of scratches or bruises on defendant's body; the fact that the photograph was a previous arrest photograph was never emphasized to the jury. In addition, the trial judge withdrew the evidence and provided a curative instruction for the jury to strike the photograph from their minds and give it no consideration. Ordinarily, when objectionable evidence is withdrawn, no error is committed. *State v. Thomas*, 350 N.C. 315, 358, 514 S.E.2d 486, 512, *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 388 (1999).

Furthermore, the trial court instructed the jury to disregard the testimony, and we must presume that the jury followed the instructions. *State v. Clark*, 298 N.C. 529, 534, 259 S.E.2d 271, 274-75 (1979). In light of the foregoing, we conclude admission of the photograph itself did not result in substantial or irreparable prejudice to defendant's case.

**[2]** Defendant also contends admission of the arrest photograph compelled him to testify in his own behalf, violating his Fifth Amendment right against self-incrimination. Our review of defendant's testimony, however, reveals that he took the stand not to answer the State's evidence regarding any prior arrests, but in order to put on evidence of self-defense. In his testimony on direct examination, defendant did not speak to his prior arrests; we thus find no inference that his taking the stand on his own behalf was induced by the erroneous admission of the photograph. *See, e.g., State v. Wills*, 293 N.C. 546, 550, 240 S.E.2d 328, 331 (1977).

**[3]** We next consider whether the trial court's admission of evidence that approximately one week before the victim's death, defendant (1) pointed and shot a gun over his mother's head and (2) pointed a gun at his brother, Ken Allen, and threatened to kill him violated our Rules of Evidence. Under Rule 404(b) of the North Carolina Rules of Evidence,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.R. Evid. 404(b). "Evidence of another offense is admissible under Rule 404(b) so long as it is relevant to any fact or issue other than the character of the accused." *State v. Scott*, 343 N.C. 313, 330, 471 S.E.2d 605, 615 (1996) (citation omitted). Relevant evidence is evidence tending "to make the existence of *any fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401 (emphasis added). Thus, Rule 404(b) is "a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

Defendant argues the only probative value of this evidence was to show that he had the propensity or disposition to commit an offense of the nature charged. We instead conclude defendant's alleged wrongful conduct was admissible to establish the "chain of circumstances" of the crime charged. *State v. Agee*, 326 N.C. 542, 546, 391 S.E.2d 171, 173 (1990). Under this principle, "[w]hen evidence leading up to a crime is part of the scenario which helps explain the setting, there is no error in permitting the jury to view the criminal episode in the context in which it happened." *State v. Parker*, 119 N.C. App. 328, 340, 459 S.E.2d 9, 16 (1995); *see also Agee*, 326 N.C. at 549, 391 S.E.2d at 174 (holding evidence of "other wrongs" is admissible for the purpose of " 'complet[ing] the story of a crime by proving the immediate context of events near in time and place' ") (quoting *United States v. Currier*, 821 F.2d 52, 55 (1st Cir. 1987)). The challenged evidence in this case was part of the chain of circumstances leading up to the victim's murder and was admissible to show defendant's state of mind in the days prior to the murder. *See, e.g., State v. Price*, 118 N.C. App. 212, 217, 454 S.E.2d 820, 823-24 (1995). These prior acts reveal not only defendant's intensifying display of violent behavior toward his family, but also tend to show the possibility that defendant was angry with Mitch for confronting him about the treatment of his family. Thus, the trial court did not err in admitting this evidence.

**[4]** Defendant nonetheless contends the trial court erred in failing to provide, in addition to the pattern jury instruction dealing with Rule 404(b) evidence, an immediate instruction limiting the use of evidence of defendant's prior misconduct to establish a chain of events establishing defendant's state of mind. However, defendant made no request for an immediate limiting instruction. Rule 105 of the North Carolina Rules of Evidence provides in part that when evidence is admissible for one purpose but not another purpose, the trial "court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." N.C.R. Evid. 105. "The admission of evidence which is competent for a restricted purpose without limiting instructions will not be held to be error in the absence of a request by the defendant for such limiting instructions." *Coffey*, 326 N.C. at 286, 389 S.E.2d at 59.

**[5]** Defendant also contends the trial court erred in admitting evidence that the victim was peaceful before defendant put forth evidence that the victim was the first aggressor, in violation of Rule of Evidence 404(a)(2). Apparently, defendant recognized that he made no objection at trial to the admission of this evidence since he urges

this Court to review the record for plain error. The plain error doctrine applies only in truly exceptional cases, placing a much heavier burden on the defendant than the burden imposed by N.C. Gen. Stat. § 15A-1443, which applies to defendants who have preserved their rights by timely objection. *State v. Cummings*, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000). In order to meet its burden under the plain error doctrine, a defendant must convince the court, with support from the record, that the claimed error is so fundamental, so basic, so prejudicial, or so lacking in its elements that absent the error the jury probably would have reached a different verdict. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

Although defendant has alleged plain error in his assignment of error on this issue, he provides "no explanation, analysis or specific contention in his brief supporting the bare assertion that the claimed error is so fundamental that justice could not have been done." *Cummings*, 352 N.C. at 636, 536 S.E.2d at 61. By failing to provide argument in support of plain error, defendant has thereby waived appellate review. N.C.R. App. P. 10(c)(4). This assignment of error is dismissed.

[6] In his next assignment of error, defendant contends the trial court erred in denying his motion for mistrial due to the emotional outbursts of Melissa Grimes, the victim's sister, following defendant's testimony on direct examination. As the jury was exiting the courtroom for a recess, Grimes began to cry loudly and shouted, "You liar! You lied!" (3 Tr. at 118). She then hit the courtroom exit door and left the courtroom. Counsel for the defendant moved for a mistrial, which the trial court denied. The trial judge then instructed the prosecutor that those persons who cannot control their emotions cannot re-enter the courtroom until they demonstrate they can remain calm. No curative instruction was requested by defendant's counsel, and none was provided.

N.C. Gen. Stat. § 15A-1061 provides in part that the judge may declare a mistrial if conduct inside or outside the courtroom results in substantial or irreparable prejudice to the defendant's case. Not every disruptive event which occurs during trial automatically requires the court to declare a mistrial. *State v. Newton*, 82 N.C. App. 555, 559, 347 S.E.2d 81, 84 (1986). Whether a motion for mistrial should be granted is a matter which rests in the sound discretion of the trial judge. *State v. Blackstock*, 314 N.C. 232, 243, 333 S.E.2d 245, 252 (1985).

We do not believe the trial judge abused his discretion in refusing to grant a mistrial in this case. After the outburst, the judge demonstrated the inappropriateness of the outburst by his statement to the prosecutor that persons unable to control their emotions will not be allowed in the courtroom. Defendant contends the trial court should have given a curative instruction with regard to Melissa Grimes's outburst. However, defendant's attorney made no request for a curative instruction or other remedial action. "Our rule has long been that where a charge fully instructs the jury on substantive features of the case, defines and applies the law thereto, the trial court is not required to instruct on a subordinate feature of the case absent a special request." *Blackstock*, 314 N.C. at 245, 333 S.E.2d at 253. As the court noted in *Blackstock*, such an instruction may well have highlighted the witness's emotional state; indeed it is possible that the defense attorney declined to request a curative instruction because of the likelihood it would emphasize the witness's outburst. *See also State v. Turner*, 330 N.C. 249, 265, 410 S.E.2d 847, 856 (1991). This assignment of error is overruled.

**[7]** Defendant next contends the trial court committed plain error in refusing to instruct the jury that defendant had no duty to retreat. "Where the defendant's or the State's evidence when viewed in the light most favorable to the defendant discloses facts which are 'legally sufficient' to constitute a defense to the charged crime, the trial court must instruct the jury on the defense." *State v. Marshall*, 105 N.C. App. 518, 522, 414 S.E.2d 95, 97, *disc. review denied*, 332 N.C. 150, 419 S.E.2d 576 (1992). If an instruction is required, it must be comprehensive. *State v. Brown*, 117 N.C. App. 239, 241, 450 S.E.2d 538, 540 (1994). Here, defendant contends he was entitled to an instruction on self-defense, mandating a comprehensive self-defense instruction which included an instruction on no duty to retreat.

The general rules of self-defense allow a defendant to use the amount of force "necessary or apparently necessary to save himself from death or great bodily harm." *State v. Pearson*, 288 N.C. 34, 39, 215 S.E.2d 598, 602 (1975). When confronted with an assault that does not threaten the person assaulted with death or great bodily harm, a party claiming self-defense is required to retreat "if there is any way of escape open to him, although he is permitted to repel force by force and give blow for blow." *Id. at* 39, 215 S.E.2d at 602-03. There is *no* duty to retreat when (1) the person assaulted is confronted with an assault that threatens death or great bodily harm or (2) the person assaulted is not confronted with an assault that threatens death or

STATE v. ALLEN

[141 N.C. App. 610 (2000)]

great bodily harm and the assault occurs in the dwelling, place of business, or premises of the person assaulted, provided the person assaulted is free from fault in bringing on the difficulty. *Id.* at 39-40, 215 S.E.2d at 603.

Here, the evidence most favorable to defendant is his own testimony as follows. Defendant and Mitch were both at the apartment of Robert Davenport the day of the shooting. Defendant was armed with a gun, which he kept under his coat behind his back. The victim was not armed. Defendant testified that the victim was "in a rage" and "all in [his] face," and began to push the defendant. (3 Tr. at 107-08). They both then began to push each other around Davenport's apartment, moving from the kitchen to the dining room. Defendant testified that the victim eventually began to reach around his back in an attempt to get his gun, at which point defendant freely left the altercation to go to the bathroom. When defendant returned, he testified he attempted to retreat from the apartment, in order to "go to church." (3 Tr. at 110). Defendant testified the victim pushed him away from the front door and into the bedroom, trying to get his gun. Defendant shot the victim before the victim obtained the gun.

Defendant's testimony reveals a series of escalating events eventually leading to the victim's death. At no time did this testimony reveal that it was actually or reasonably necessary under the circumstances to kill the victim. The unarmed victim never obtained defendant's gun and there was no evidence refuting the possibility that the victim attempted to obtain defendant's gun in order to protect himself. Accordingly, defendant was required to retreat if there was "any way of escape open to him." *Pearson*, 288 N.C. at 39, 215 S.E.2d at 602-03. Defendant's testimony indicates that after the victim began to reach around his back in an attempt to obtain defendant's gun, defendant left the altercation to go to the bathroom. At this time, defendant had an avenue of escape open to him. The diagram of Davenport's apartment reveals that in order to travel from the dining room to the bathroom, defendant was required to pass by the front door of the apartment. Defendant's testimony did not indicate that at that time, the front door was obstructed in any way. We therefore conclude defendant was not entitled to an instruction that he had no duty to retreat.

We have reviewed defendant's remaining assignments of error and find them to be without merit.

No error.

Judges McGEE and HORTON concur.