STATE OF NORTH CAROLINA
v.
MARTINIE SEETA LAKEY.[1]
No. COA06-602
Court of Appeals of North Carolina.
Filed February 6, 2007
This case not for publication
Attorney General Roy Cooper, by Elizabeth F. Parsons, Assistant Attorney General, for the State.
M. Gordon Widenhouse, Jr., for Defendant.
WYNN, Judge.
An instruction on flight is proper as long as "there is some evidence in the record reasonably supporting the theory that [the] defendant fled after commission of the crime. . . ."[2] Here, Defendant argues that the trial court's instruction on flight was not supported by the evidence. Because witnesses testified that Defendant ran following the shooting and again when approached by police, we uphold the trial court's decision to instruct the jury on flight. The underlying facts tend to show that on the evening of 10 July 2004, several individuals including Defendant Martinie Seeta Lakey and her husband, Sam Lakey, gathered at a bar called Double Bogeys. Defendant wore a T-shirt on which was printed the phrase, "Your anger makes me happy," which apparently prompted bar patron Christopher Oakes to ask Defendant, "Do you like rough sex?" Defendant's husband responded, "That's my wife," and the two men became entangled in a brawl.
Upon noticing the fight, Dean Maas, husband of the bar manager, Ann Maas, attempted to break up the fight. Mr. Maas was hit with a beer bottle and a broken pool cue. Eventually, the fight broke up, and Mr. Oakes and his friends, including Christopher Anderson and others, left the bar. Thereafter, Ann and Dean Maas escorted Mr. Lakey and his wife, Defendant, out of the bar.
Events outside of the bar apparently led to a resumption of the fight between Mr. Oakes and Mr. Lakey. Again, Mr. Maas tried to break up the fight but was pulled away by one of the bystanders. Eventually, Mr. Oakes pinned Mr. Lakey down at which point Defendant returned to the bar, broke a pool stick across her leg, and said, "F____k all you mother f____kers. I'll kill all you mother f____kers." Defendant then attempted to hit Mr. Oakes with the broken pool stick but was prevented from doing so by one of Mr. Oakes' friends, Mr. Anderson. Apparently Defendant left the scene at that point but returned shortly afterwards holding a revolver, which she pointed at Mr. Oakes. According to State witnesses, Mr. Oakes backed away from her with his hands in the air. Defendant shot and killed Mr. Oakes within a distance of four feet. After the shooting, Defendant and her husband ran around the corner of the bar. When police officers arrived, someone yelled, "There she is", referring to Defendant. Officer John Miller and another officer approached the side of the bar, saw Defendant and her husband, drew his gun and yelled, "Stop, police." Defendant and her husband "ran several feet at a good pace," before complying with Officer Miller's order to stop.
Defendant testified in her defense that her husband was unable to do anything before Mr. Oakes struck him during the first fight, and her husband never fought back. She stated that several people were involved in the fight and that she only struck Mr. Maas because she thought he was holding her husband down. Defendant stated that during the fight outside, Mr. Oakes pinned her husband to the ground, and his friend, Mr. Anderson, got involved in the fight. Defendant stated that several guys attacked her husband, and no one came to their aid. Defendant thought Mr. Oakes and his friends were going to kill her husband. Defendant stated that she did not jab Mr. Oakes with the pool stick, but she did swing it around. Defendant stated that she retrieved her gun and told Mr. Oakes and his friends to get away from her husband; however, everyone backed away except for Mr. Oakes who she thought was coming towards her. Defendant stated that only at that point did she fire the gun at Mr. Oakes. Defendant further stated that after the shooting, she grabbed her husband, moved to the side of building, and called 911. Defendant explained that she returned to the front of the building to retrieve her purse, when she heard someone yell, "There she is." Defendant then ran towards her husband, who was lying on the ground. Defendant testified that she stopped when Officer Miller ordered her to stop.
Following a jury trial, Defendant was convicted of voluntary manslaughter and sentenced to a minimum term of 80 months and maximum term of 105 months. Defendant appeals, contending to this Court that the trial court erred in its jury instruction on (I) flight and (II) self-defense. Our standard of review of her appeal requires us to hold a jury instruction "sufficient if it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed." State v. Blizzard, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (internal citations and quotations omitted). Moreover,
[t]he party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.
Id.

I.
Defendant first argues that the trial court committed prejudicial error by instructing the jury on flight. Specifically, Defendant contends that the flight instruction was improper because she testified that she did not flee police, but left because she was concerned for her and her husband's safety. We disagree.
An instruction on flight is proper as long as "there is some evidence in the record reasonably supporting the theory that [the] defendant fled after commission of the crime. . . ." State v. Thompson, 328 N.C. 477, 489-90, 402 S.E.2d 386, 392. However, "[m]ere evidence that the defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension." Id. at 490, 402 S.E.2d at 392. After careful review of the record, we find some evidence indicating flight.
The record on appeal shows that State witnesses testified that they were at the scene of the incident and saw Defendant run when the police officers approached her. Another witness at trial, Lori Stewart, testified that she noticed that Defendant "just ran off" after the shooting; and Defendant and her husband, "ran across the street . . . so that nobody could see her any more." Officer Miller testified that when he approached the side of the building, he found Defendant and her husband with their backs to him. He further testified that when he ordered Defendant and her husband to stop and put their hands up, they ran a few steps before complying with his demand. We conclude that this evidence was sufficient to warrant a jury instruction on flight.
Nonetheless, Defendant argues that the flight instruction was improper because she testified that she left the crime scene due to concern for her and her husband's safety. However, "[t]he fact that there may be other reasonable explanations for defendant's conduct does not render the instruction improper." State v. Irick, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977); See also State v. Lampkins, 283 N.C. 520, 196 S.E.2d 697 (1973)(holding that the court had sufficient evidence to support instruction on flight); State v. DeBerry, 38 N.C. App. 538, 540, 248 S.E.2d 356, 357 (1978) (holding that court did not err when it allowed testimony concerning the defendant's flight from courtroom six months earlier). Moreover, "[w]hat defendant's flight meant, if anything, was a question of fact, not law, that was properly left to the jury. . . ." State v. Byrd, 78 N.C. App. 627, 629, 337 S.E.2d 665, 666 (1985). Because the record shows sufficient evidence to reasonably support the theory that Defendant fled after the shooting, we uphold the trial court's instruction on flight. See Thompson 328 N.C. at 489-90, 402 S.E.2d at 392.

II.
Defendant next contends that the trial court erred by instructing the jury that "[Defendant] would lose the benefit of self-defense and defense of family if she was the first aggressor." She contends the evidence did not support such an instruction. Defendant's argument is without merit.
At the outset, we note that Defendant did not object to this jury instruction at trial and therefore failed to properly preserve this error for review on appeal. N.C. R. App. P. 10(b)(2) ("A party may not assign as error any portion of the jury charge or omission there from unless he objects thereto before the jury retires to consider its verdict. . ."). Thus, the Defendant seeks our review of this assignment of error for plain error. "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Reid, 335 N.C. 647, 667, 440 S.E.2d 776, 787 (1994)(citations omitted).
In general, when a court decides to instruct a jury on a defense, the court must review the evidence, "in the light most favorable to the defendant," and then decide whether the evidence discloses "facts which are legally sufficient to constitute a defense to the charged crime." State v. Allen, 141 N.C. App. 610, 618, 541 S.E.2d 490, 496 (2000) (citations and internal quotations omitted). If this burden is met, the trial court "must instruct the jury on the defense." Id. Moreover, "[i]f an instruction is required, it must be comprehensive." Id. Nevertheless, this Court has held that it "is error for the court to charge the jury that a defendant, if otherwise acting in self-defense, is guilty of voluntary manslaughter if he was the aggressor in bringing on the fight where the record contains no evidence that the defendant was the aggressor." State v. Temples, 74 N.C. App. 106, 109, 327 S.E.2d 266, 268 (1985).
Here, the evidence presented reveals that there were two fights between Defendant's husband and Mr. Oakes. Mr. Anderson and Mr. Maas testified that at the conclusion of the second fight, Mr. Oakes stood up, backed away with his hands in the air, and prepared to leave, when he was approached by Defendant. Mr. Anderson also testified that the second fight began when the Defendant's husband approached Mr. Oakes, and that Defendant hit Mr. Oakes with a pool stick while he was fighting with her husband. Although witnesses' accounts of the fight differ, the evidence was sufficient to warrant the jury instruction that "[Defendant] would lose the benefit of self-defense and defense of family if she was the first aggressor." Accordingly, we hold that Defendant's assignment of error is without merit.
No error.
Judges HUNTER and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] Per the judgment, Defendant's first name is spelled "Martinie", however, throughout the Defendant's brief her name is spelled "Martine".
[2] State v. Thompson, 328 N.C. 477, 489-90, 402 S.E.2d 386, 392 (1991)(citations omitted).