STATE OF NORTH CAROLINA v. JOHN FRANCIS DYE, Defendant

No. COA09-1574

(Filed 19 October 2010)

**1. Appeal and Error— preservation of issues—failure to make motion to strike testimony**

Although defendant contended that the trial court erred in a statutory rape, second-degree rape, and incest case by allowing a pediatrician to testify as to her opinion of the minor victim's truthfulness, this argument was not preserved. Even assuming defendant properly objected to the testimony he did not make a motion to strike. Further, defendant failed to object to the State repeating the question or the answer.

**2. Evidence— expert testimony—sexual abuse of child—secondary gain—no prejudicial error**

The trial court did not commit plain error in a statutory rape, second-degree rape, and incest case by permitting a pediatrician's testimony regarding secondary gain. Even assuming *arguendo* that the testimony was erroneously admitted and that it impermissibly bolstered the minor's testimony, the error did not arise to plain error given the overwhelming evidence of defendant's guilt.

**3. Criminal Law— denial of motion for mistrial—victim outbursts during closing arguments**

The trial court did not abuse its discretion by denying defendant's motion for a mistrial made after the jury's verdict in a statutory rape, second-degree rape, and incest case based on the victim's outbursts during defense counsel's closing arguments. The trial court took immediate action to respond to the outburst, eventually banned the victim from the courtroom, and provided defendant with an opportunity to make any motions or request further instructions during the trial.

Appeal by defendant from judgments entered on or about 28 April 2009 by Judge Orlando F. Hudson in Superior Court, Durham County. Heard in the Court of Appeals 12 May 2010.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Russell J. Hollers III, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted by a jury of two counts of statutory rape, two counts of incest of a child, second degree rape, and incest. Defendant appeals, arguing the trial court erred by allowing certain testimony from an expert witness and in failing to grant defendant's motion for a mistrial. For the following reasons, we find no error.

## I. Background

The State's evidence tended to show that in 1993 Ms. Jane Smith[1] and defendant began a romantic relationship; at the time Ms. Smith and defendant began dating, Ms. Smith's daughter, Mary, was four years old. In 1994, Ms. Smith and defendant moved in together. On 29 May 1999, Ms. Smith married defendant. In 2004, when Mary was fourteen years old, she wanted to join the marching band at her high school. Defendant told Mary she had to prove she deserved to be in band and then had sexual intercourse with her; Mary began crying and told defendant, "[T]his isn't right. You're my step-dad, you know, what are you doing." Over the course of 2004 and the next couple of years defendant forced Mary multiple times to have sexual intercourse, oral sex, and "anal penile sex." In September of 2006, Ms. Smith walked into her bedroom and saw defendant "on top of my daughter on the floor in my bedroom, having sex, penile to vaginal[.]"

On or about 19 February 2007, defendant was indicted for two counts of statutory rape, two counts of incest of a child, second degree rape, incest, and committing a crime against nature. After a jury trial, defendant was found guilty of two counts of statutory rape, two counts of incest of a child, second degree rape, and incest. Defendant appeals.

## II. Dr. Narayan's Testimony

On appeal, two of defendant's issues focus on the testimony of Dr. Aditee Narayan, a pediatrician, "an assistant professor at Duke University in the Department of Pediatrics, . . . an Associate Medical Director for the Child Abuse Neglect Medical Evaluation Team, . . . [and an] Associate Program Director for the Duke Residency Training Program." During defendant's trial Dr. Narayan testified "as an expert in the area of general pediatrics, child behavior, diagnostic interviewing for purposes of a child medical evaluation, and the diagnosis and treatment of children suspected of being sexually abused." We will analyze defendant's two arguments separately.

[1] Defendant first argues that Dr. Narayan improperly testified as to her opinion of Mary's truthfulness. During direct examination by the

---

1. Pseudonyms will be used to protect the identity of the victim.

State, Dr. Narayan was asked, "Based on your interview and your physical examination of [Mary], do you have an opinion as to whether your findings are consistent with the child's history or disclosure of sexual assault?" The following dialogue then took place:

A   Yes.

MR. CAMPBELL [defendant's attorney]: Objection.

THE COURT: Overruled.

. . . .

Q   What is your opinion?

MR. CAMPBELL: Objection.

THE COURT: Hold on. Mr. Deputy, if you'll take the jury to the jury deliberation room.

(JURY LEAVES THE COURTROOM)

THE COURT: Outside the presence of the jury, Doctor, you can answer.

THE WITNESS: I believe that, based upon my medical evaluation, her presentation is consistent with the history that she provided.

THE COURT: Any other questions?

MS. PAUL: [State's attorney] No.

THE COURT: Mr. Campbell?

MR. CAMPBELL: No. No argument.

THE COURT: Did you want to be heard?

MR. CAMPBELL: No, Judge.

THE COURT: All right.

MR. CAMPBELL: If that's going to be the answer.

THE COURT: All right, that was the answer right now.

MR. CAMPBELL: I understand.

THE COURT: All right.

(JURY RETURNS TO THE COURTROOM)

THE COURT: All right, your objection's overruled.

. . . .

Q   Based on your examination and interview, do you have an opinion as to whether your findings are consistent with [Mary]'s history of sexual assault?

A   I do have an opinion.

Q   What do you base that opinion on?

A   I base the opinion on her history, so the interview, her physical examination, a review of her records, I was able to form my opinion.

Q   What is that opinion?

A   My opinion is that, based on her presentation, her lengthy history, her physical examination, her behaviors, they're all consistent with the history that she provided of chronic sexual assault.

MR. CAMPBELL: Objection.

THE COURT: Overruled.

Thus, defendant's attorney objected to Dr. Narayan's testimony, then stated during *voir dire* that he did not want to be heard as to any specific basis for his objection and seemingly withdrew his objection, only to object again to the same testimony once the jury returned and examination resumed. Defendant's attorney did not state a basis for either of his two objections.

Defendant now contends that "the trial court erred in allowing the State's expert to give her opinion that [Mary] was truthful[.]" (Original in all caps.) Defendant argues that Dr. Narayan's testimony that "[m]y opinion is that, based on her presentation, her lengthy history, her physical examination, her behaviors, they're all consistent with the history of that she provided of chronic sexual assault" was "not based on anything other than Dr[.] Narayan's circular reasoning[.]" Even assuming defendant properly objected to this testimony after he failed to state a ground for his objection during *voir dire* and arguably even withdrew it, defendant has still failed to preserve this issue for appeal as he did not make a motion to strike the testimony. *See State v. Curry*, —— N.C. App. ——, ——, 692 S.E.2d 129, 138-39 (2010) ("We first note that defendant's counsel objected after the witness had answered the question, and

he failed to make a motion to strike; thus, defendant waived this objection. Furthermore, when the State repeated the question, defendant failed to object to either the question or the answer; this too would waive defendant's previous objection." (citation omitted); *State v. Burgin*, 313 N.C. 404, 409, 329 S.E.2d 653, 657 (1985) ("The one objection made was lodged after the witness responded to the question. Defendant made no motion to strike the answer, and therefore waived the objection." (citations omitted)).

**[2]** Defendant next argues that the trial court committed plain error in permitting Dr. Narayan's testimony regarding secondary gain, as this testimony was also effectively vouching for Mary's truthfulness. During the State's direct examination of Dr. Narayan, the following dialogue took place:

Q  ... Are you familiar with the concept of secondary gain?

A  Yes.

Q  If you would tell the jury what that is.

A  Secondary gain is if you do something to get something else out of it. So if you—if you steal a cookie from the cookie jar in an effort to try to get attention from your mom because she's been so busy doing other things that she wasn't paying any attention to you, that would be secondary gain. When you do one act in order to get something else out of that.

Q  It's interesting the analogy that you just used. You steal a cookie from the cookie jar, you do something naughty in order to get attention from your mother because your mother's too busy.

In [Mary]'s situation, did you have any opinion or thought on the issue of secondary gain?

A  I did.

Q  If you would just explain to the jury what you mean.

A  So the presence of secondary gain is something we always consider when we're asked to do these medical evaluations for children. Sometimes children will say things and you have to think about, well, why are they saying it, is there something else going on.

That's incredibly important because the recommendations that I would make for that child could be very different than the recommendations that I made for [Mary].

I thought that there actually was really very little secondary gain for [Mary]. She lost a great deal with this process, and I did not in my time with her feel that there was any secondary gain which she got out of this process.

She's not the one who disclosed anything, to begin with. Her mother walked in, and that's where everything started.

As to the preceding testimony, defendant argues that "the trial court plainly erred in allowing the State's expert to give her expert opinion that [Mary] was telling the truth." (Original in all caps.) Defendant contends that "the lack of a diagnostic physical finding means that the opinion only served to vouch for the witness's credibility. . . . The trial court erred in allowing Dr[.] Narayan to tell the jury that she had the expert 'feeling' that [Mary] was telling the truth."

As defendant did not object to the preceding testimony, he concedes that we will review it only for plain error.

Plain error is an error that is so fundamental as to result in a miscarriage of justice or denial of a fair trial. A defendant must demonstrate not only that there was error, but that absent the error, the jury probably would have reached a different result. Accordingly, defendant must show that absent the erroneous admission of the challenged evidence, the jury probably would not have reached its verdict of guilty.

*State v. Cunningham*, 188 N.C. App. 832, 835, 656 S.E.2d 697, 699-700 (2008) (citations and quotation marks omitted).

Defendant cites no case law to support his argument that testimony regarding "secondary gain" should be considered as testimony that "vouch[es] for the witness's credibility[.]" However, even assuming *arguendo* that the admission of Dr. Narayan's testimony was erroneously admitted and impermissibly bolstered Mary's testimony, we still do not conclude that this error rises to the level of plain error. *See id.*

In *State v. Boyd*, this Court stated,

[i]t is fundamental to a fair trial that the credibility of the witnesses be determined by the jury and thus an expert's opinion to the effect that a witness is credible, believable, or truthful is inadmissible. The admission of such an opinion is plain error when

the State's case depends largely on the prosecuting witness's credibility. For example, in *State v. Holloway*, we found plain error in experts' opinions of a child's truthfulness when the child testified to sexual abuse not leaving physical injury, and the defendant testified to the contrary and presented evidence of a normal relationship with the child. In that case the child did not report the alleged incident until more than four weeks later and there was no suggestion of changed behavior, immediately after or subsequently.

Here, in contrast, beyond the victim's testimony, the State also presented evidence that the victim, upset and crying, called her grandmother to pick her up early, gave consistent statements to her mother, Officer Bowens, Department of Social Services staff, and Ms. Dosher [, the social worker], and exhibited changed behavior following the alleged incident. Defendant did not testify. This additional evidence was such that it is unlikely that the jury would have reached a different conclusion absent [the social worker's] testimony about consistency and plausibility.

—— N.C. App. ——, ——, 682 S.E.2d 463, 468 (2009) (citations, quotation marks, ellipses, and brackets omitted), *disc. review denied,* —— N.C. ——, —— 691 S.E.2d 414 (2010).

Here, beyond Mary's testimony, the evidence included Ms. Smith's testimony regarding defendant's abnormal relationship with both his biological daughter and Mary and her personal observation of defendant having "penile to vaginal" intercourse with Mary, as well as defendant's own statements that he had been sexually active with Mary for "two years" and that "he was a sick man." After Ms. Smith discovered defendant with Mary and removed defendant and his belongings from the house, defendant went to the Dominican Republic from where he later had to be extradited for purposes of prosecution. Just as in *Boyd*, "this additional evidence was such that it is unlikely that the jury would have reached a different conclusion absent [the expert's] testimony[.]" *Id.* Accordingly, both of defendant's arguments regarding Dr. Narayan's testimony are overruled.

### III. Motion for Mistrial

[3] Lastly, defendant contends that "the trial court erred in denying Mr. Dye's motion for mistrial." (Original in all caps.) During defendant's attorney's closing argument, Mary interrupted at least twice. The first time Mary told defendant's counsel, "You shut up, how dare you say I'm unbelievable. I can't listen to this. Those were his words coming out of his mouth. How dare he torture me more. Why is he doing this to me?"

The jury was sent out of the courtroom and the trial court informed the State's attorney that Mary would not be permitted to remain in the courtroom unless she was "under control." Mary apologized and agreed to "be quiet." The jury returned to the courtroom and Mr. Campbell resumed his closing argument only to once again be interrupted.

From the transcript it is not clear what caused the second interruption, but after the jury retired for deliberation the trial court described the entire incident as follows:

[T]he Court does recall that there were at least two outbursts by . . . [Mary] during Mr. Campbell's argument. The Court warned her twice that she would have to remain calm if we were to continue. When she did not remain calm, the Court asked that she be escorted from the courtroom, which she was.

Mr. Campbell was able to continue with his argument. Although counsel indicates she came back in the courtroom, the Court during its jury instructions did not see her come back in the courtroom. I was paying attention to the jury as I read the jury instructions. I did not see the jury disrupted by . . . [Mary], if she did return to the courtroom.

The Court does find that at least the two outbursts were intentional on . '. . [Mary]'s behalf. The Court did note that she appeared to have some sort of asthmatic attack during the course of Mr. Campbell's argument. Although it was disruptive in that he could not continue, the Court did not find, does not find, that that was intentional on her part.

As I said earlier, I did not see . . . [Mary] come back in the courtroom as I was instructing the jury, and if she had some sort of attack, the Court did not notice it. I was watching the jury. I did not see that the jury was distracted by any attack in the court.

The trial court then asked Mr. Campbell, "Were you moving for a mistrial?" To which Mr. Campbell responded, "No, Judge, not at this time." The trial court then determined that because Mr. Campbell was not requesting a mistrial, it would not grant one *ex mero motu*. The jury continued deliberations and after the verdicts were read, Mr. Campbell moved for a mistrial which was subsequently denied.

We first note that it is problematic for defendant to directly state to the trial court that he did not want a mistrial and to fail to request any other remedial action by the trial court, only to request mistrial upon

learning that the jury had found him guilty on all the charges, and to now base his argument on appeal on the denial of his belated request. Defendant argues before us that Mary's "conduct inside the courtroom resulted in substantial and irreparable prejudice to Mr. Dye's defense." However, according to defendant, the "substantial and irreparable prejudice" was not apparent until after the jury had found defendant guilty of all charges.

One of the purposes of requiring parties to object and make motions before the trial court is so that the trial court has the opportunity to correct any errors. *See Reep v. Beck*, 360 N.C. 34, 37, 619 S.E.2d 497, 499 (2005).

> Rule 10(b)(1) provides, in part, that to preserve a question for appellate review, 'a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make.' N.C.R. App. P. 10(b)(1). We have observed that:

> This subsection of Rule 10 is directed to matters which occur at trial and upon which the trial court must be given an opportunity to rule in order to preserve the question for appeal. The purpose of the rule is to require a party to call the court's attention to a matter upon which he or she wants a ruling before he or she can assign error to the matter on appeal.

*Id.* (citation, ellipses, and brackets omitted). The very purpose of Rule 10(b)(1) is disregarded by defendant's attempt to receive a favorable ruling only *after* the jury has returned with its verdicts, where the trial court had previously given him the opportunity to request mistrial or other remedial action.

Furthermore, a "[m]istrial is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Smith*, 320 N.C. 404, 418, 358 S.E.2d 329, 337 (1987) (citation and quotation marks omitted). The trial court "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2003). However, "[n]ot every disruptive event which occurs during trial automatically requires the court to· declare a mistrial." *State v. Allen*, 141 N.C. App. 610, 617, 541 S.E.2d 490, 496 (2000) (citation omitted), *disc. review denied and appeal dismissed*, 353 N.C. 382, 547 S.E.2d 816

(2001). "Our standard of review when examining a trial court's denial of a motion for mistrial is abuse of discretion." *State v. Simmons*, 191 N.C. App. 224, 227, 662 S.E.2d 559, 561 (2008) (citation omitted).

Defendant focuses his argument here on the lack of a curative instruction, but as our Court stated in *Allen*,

> defendant's attorney made no request for a curative instruction or other remedial action. Our rule has long been that where a charge fully instructs the jury on substantive features of the case, defines and applies the law thereto, the trial court is not required to instruct on a subordinate feature of the case absent a special request. As the court noted in *Blackstock*, such an instruction may well have highlighted the witness's emotional state; indeed it is possible that the defense attorney declined to request a curative instruction because of the likelihood it would emphasize the witness's outburst.

*Allen*, 141 N.C. App. at 618, 541 S.E.2d at 496 (citations and quotation marks omitted).

Here, after Mary's initial outburst, the trial court removed the jury from the courtroom and specifically instructed that Mary must remain quiet and Mary verbally agreed. After Mary's second outburst, the trial court had Mary removed completely from the courtroom until after Mr. Campbell had finished his closing argument and provided defendant an opportunity to request any remedial measures, including mistrial. Defendant declined to make any requests until after the jury had returned its verdict. As the trial court took immediate action to respond to the outburst, eventually banned Mary from the courtroom, and provided defendant with an opportunity to make any motions or request further instructions, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a mistrial. *See Allen* at 618, 541 S.E.2d at 496. This argument is overruled.

IV. Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judges McGEE and HUNTER, JR., Robert N. concur.