IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-458

Filed 5 February 2025

Cumberland County, No. 22 CRS 50073

STATE OF NORTH CAROLINA

    v.

ROGER DALE NOBLES

Appeal by defendant from judgment entered 23 August 2023 by Judge Gale M. Adams in Cumberland County Superior Court. Heard in the Court of Appeals 15 January 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General J. Blake Norman, for the State.*
>
> *Ryan Legal Services, PLLC, by John E. Ryan III, for defendant.*

ARROWOOD, Judge.

Roger Nobles ("defendant") appeals the jury verdict of guilty of first-degree murder and subsequent imposition of a life sentence without the possibility of parole. For the following reasons, we find the defendant received a fair trial free from prejudicial error.

## I.    Background

### A.    Commission of the Crime

During the trial, the witness' and defendant's testimony tended to show the

following. On 3 January 2022, a motorcyclist, Steven Addison ("Addison"), and defendant were stopped at an intersection in Fayetteville, North Carolina. Addison split two of the lanes approaching the traffic light and stopped next to defendant's truck. Defendant told Addison he was breaking the law, and Addison and defendant's son began to argue. Both parties proceeded through the intersection before stopping at the next intersection. Addison and defendant's son continued to argue with each other; Addison left his bike and defendant's son exited the vehicle. Defendant testified that he was worried about what could happen to his son "because of his [son's] temper." Defendant then pulled his gun out of its holster, showed Addison that he had a gun, then fired, killing Addison. Defendant then left the scene and went home, where the sheriff's department was waiting for him.

## B. Juror Misconduct

On 22 August, the court conducted a hearing on juror misconduct. The court announced that "some jurors were overheard discussing the case in contradiction of the jury instructions that they were given not to discuss the case." The court first brought in Juror 9, who stated that he had not discussed the case with anyone outside the courtroom or jury deliberation room. Alternate Juror 1[1] was called and likewise denied speaking about the case. The court then put on record that it had received information that Jurors 9 and 13 had been at the snack bar discussing how the facts

---

[1] This juror is referred to as Juror 13 in portions of the transcript and as such in defendant's brief.

could support a lesser charge. The court heard testimony from Rhonda Shirley ("Ms. Shirley"), a volunteer with the Fayetteville Police Community Accountability Task Force ("PACT"), who stated that she observes cases to learn how to be a private investigator. She testified that she was getting lunch in the deli and sat near two jurors who began discussing details of the case for which they were jurors. Once she heard them discussing the details, she began recording their conversation. They discussed how they could "line up the evidence to maintain [defendant's] innocence." On cross-examination, the State questioned Ms. Shirley on the relationship between the president of the Fayetteville PACT, Chilleko Hurst ("Mr. Hurst"), and the family of the victim. Hurst had a relationship with Addison's family and had been attempting to provide them with support. Ms. Shirely testified that she had never discussed the case with Mr. Hurst, nor had he ever expressed his opinion on the case to her. She stated that while she did ask Mr. Hurst, in general terms, how to handle a situation such as the one she had just encountered, he instructed her to speak with the former president of PACT, Kathy Greggs, who provided her with the steps to follow.

The hearing continued on the following day, when the recording taken by Ms. Shirley was played. Judge Adams noted that the court had had the opportunity to review the video, and stated that it showed three jurors at the table: Juror 6, Juror 9, and Alternate Juror 1. Juror 6 was called, who denied discussing the case with anyone, or overhearing anyone discussing the case. Judge Adams ultimately ruled

that audio quality from the recording rendered it unhelpful, and that the decision would turn on witness testimony. Judge Adams dismissed Juror 9 and Alternate Juror 1, with Alternate Juror 2 taking Juror 9's place, and made the following statement:

> The Court has considered the testimony of the witness under oath and has also considered the statements made by all three jurors in making this determination. The conversation that was recorded was between juror number 9 and juror number 13. Juror number 6 was not included as having been involved in the conversation at all, and the juror number 6 as so indicated that not only did they not participate in such a conversation but also that they did not overhear such a conversation. In my discretion I am going to remove those two jurors.

Defendant's counsel opposed the trial court's exercise of its discretion, arguing that either the defense should have an opportunity to exercise a preemptory challenge as to Juror 6, or that if Juror 6 was not to be excused, none of the jurors should have been excused. The trial court noted the objections for the record, while also noting "that throughout this entire process the Court has acted within its discretion."

Defendant was subsequently found guilty of first-degree murder and sentenced to life in prison without the possibility of parole. Defendant gave notice of appeal in open court.

## II. Discussion

Defendant raises one issue on appeal, whether the trial court abused its discretion by dismissing Juror 9 and Alternate Juror 1. For the following reasons,

we find that the trial court did not abuse its discretion.

"Due process guarantees defendants a panel of impartial jurors, and the trial court has a duty to ensure the jurors 'remain impartial and uninfluenced by outside persons.'" *State v. Galbreath*, 906 S.E.2d 514, 517 (N.C. Ct. App. 2024) (quoting *State v. Rutherford*, 70 N.C. App. 674, 677 (1984)). Upon an allegation of juror misconduct, the trial court must make appropriate investigations "to determine if misconduct has occurred and if the defendant has been prejudiced." *Id.* (citing *State v. Drake*, 31 N.C. App. 187, 191 (1976)). The trial court's determination on the existence and extent of jury misconduct is given great weight and deference on appeal, as these determinations and the effect of possible misconduct "depend on facts and circumstances specific to the case." *Id.* (citing *Drake*, 31 N.C. App. at 190). "[A] mistrial is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Jones*, 241 N.C. App. 132, 138 (2015) (quotation marks and citation omitted).

Accordingly, this court reviews the decision to dismiss a juror, and the determination to remove a juror for misconduct, for abuse of discretion. *See State v. Davis*, 325 N.C. 607, 621–22 (1989); *State v. Drake*, 31 N.C. App. 187, 190 (1976). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *Davis v. Davis*, 360 N.C. 518, 523 (2006) (internal quotation marks and citation omitted).

"In sum, where the trial court has made a 'careful, thorough' investigation and

concluded the conduct has not prejudiced the jury on any key issue, we have generally declined to find it abused its discretion." *Galbreath*, 906 S.E.2d at 517 (citation omitted).

In this case, the trial court became aware of possible juror misconduct between Juror 9 and Alternate Juror 1. The trial court promptly conducted a hearing on the allegations and made a thorough investigation, hearing testimony from witnesses and reviewing video footage of the alleged misconduct. Following the investigation and hearing, the trial court determined, in its discretion, that Juror 9 and Alternate Juror 1 should be removed.

Defendant presents a somewhat novel argument as the first part of his appeal, as is evidenced by his lack of citations to cases that contain a similar factual scenario as his own. Cases concerning juror misconduct generally involve an appeal by a defendant that a juror was not properly investigated, or was not removed when their presence prejudiced the defendant. *See, e.g., State v. Salentine*, 237 N.C. App. 76 (2014) (no abuse of discretion in declining to find a mistrial and conduct further investigation into juror misconduct given the deference due the trial court); *State v. Harris*, 145 N.C. App. 570 (2001) ("Not every violation of a trial court's instruction to jurors is such prejudicial misconduct as to require a mistrial.")

By contrast, defendant argues that the removal of a juror, which he contends was arbitrary, prejudiced him *per se* when the trial court refused to reopen *voir dire*. At no point, however, does defendant argue that the initial *voir dire* process suffered

from any fatal defect; rather, he appears to attack the system of alternate jurors itself. Defendant cites to *State v. McKenna*: "[s]o long as the jurors who are actually empaneled are competent and qualified to serve, defendant may not complain . . . ." 289 N.C. 668, 681 (1976). Defendant also cites to *State v. Gell*: "The goal of jury selection is to ensure that a fair impartial jury is empaneled." 351 N.C. 192, 200 (2000) (citations omitted). Defendant follows this citation by stating that "[s]uch a jury was empaneled in this case – and it included Juror 9 and Juror 13."

However, the fair and impartial jury *also* included Alternate Juror 2, who replaced Juror 9. Defendant makes no argument that Alternate Juror 2 was incompetent to serve as a juror, or that they would be unfair or partial towards one side. If defendant did not wish there to be any possibility that Alternate Juror 2 serve on the jury, his opportunity to have that juror removed was during *voir dire*, which he failed to do.

More importantly, defendant has failed to show how he was prejudiced by the removal of Juror 9 and Alternate Juror 1. The trial court promptly conducted a hearing on the alleged misconduct, investigated the allegations and evidence, and in its discretion excused those jurors. Defendant has failed to show " 'such serious improprieties as would make it impossible to attain a fair and impartial verdict.' " *Jones*, 241 N.C. App. at 138 (quoting *State v. Dye*, 207 N.C. App. 473, 481–82 (2010)). Therefore, we hold that the trial court did not abuse its discretion in removing Juror 9 and Alternate Juror 1.

III.   Conclusion

For the foregoing reasons, we find that the trial court exercised its discretion in removing the juror and alternate and that defendant received a fair trial.

NO ERROR.

Judges COLLINS and STADING concur.